T. MATTHEW PHILLIPS, ESQ.

Calif. State Bar No. 165833

4894 W. Lone Mountain Rd., No. 132

Las Vegas, Nevada 89130

Tel: (323) 314-6996

TMatthewPhillips@aol.com

*Plaintiffs' Counsel*

# UNITED STATES COURT *of* APPEALS

## NINE CIRCUIT

| | |
|---|---|
| | **Court of Appeals No.: 24-2537** |
| **1.  JASON D'SOUZA** | **[2:23-cv-08230-SVW-E]** |
| **2.  KRISTINA EISENACHER** | |
| **3.  ROB EMERT** | APPELLANTS' |
| **4.  JENNIFER GARNICA** | OPENING BRIEF, |
| **5.  KRISTEN JOSEPH** | [*Excerpts of Record filed* |
| **6.  RHONDA REYNA** | *in conjunction herewith*]. |
| **7.  PATRICIA BOONE** | |
| **8.  MARK FIDELMAN** | (***Oral Argument Requested***) |
| **9.  DAVID KING** | |
| **10. ALISA ROTHMAN** | |
| | |
| *Plaintiffs* | |
| | |
| **vs.** | |
| | |
| **HON. PATRICIA GUERRERO** | |
| *In Her Honor's Official Capacity* | |
| *as Council Chair for the* | |
| *Judicial Council of California* | |
| | |
| *Defendants* | |

# TABLE *of* CONTENTS

Heading:                                                              Page No.:

FRAP 28-2.2 – Statement of Jurisdiction . . . . . . . . . . . . . . .   1

FRAP 28(a)(4) – Jurisdictional Statement . . . . . . . . . . . . . . .   1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

I.      Relevant Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

II.     Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

III.    Unsigned Minute Order . . . . . . . . . . . . . . . . . . . . . . .   9

IV.     Strict Scrutiny Analysis . . . . . . . . . . . . . . . . . . . . . .   9

V.      Isssues on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

VI.     *De Novo* Review . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

VII.    Relief Sought on Appeal . . . . . . . . . . . . . . . . . . . . . .  10

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

VIII.   Does Judicial Immunity Apply? (No.) . . . . . . . . . . . .  11

IX.     Does Eleventh Amendment Immunity Apply? (No.) . . .  12

X.      Does *Rooker-Feldman* Apply? (No.) . . . . . . . . . . . . . .  18

XI.     Do Plaintiffs State a Viable Monell Claim? (Yes.) . . . .  23

XII.    Summary & Conclusion . . . . . . . . . . . . . . . . . . . . . . .  24

*     *     *

# TABLE *of* AUTHORITIES

Case Law:                                                     Page No.:

*Adickes v. S. H. Kress & Co.*, 398 U. S. 144 (1970) . . . . . . . . . . . .    22

*Board of Comm'rs of Bryan Cty. v. Brown,*

    520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

*Colorado River Water Conservation Dist. v. U.S.,*

    424 U.S. 800, (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

*District of Columbia Court of Appeals v. Feldman*,

    460 U. S. 462 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

*Ervin v. Judicial Council of California,* [No. C 08-0299 PJH,

    (N.D. Cal. Apr. 24, 2008)] . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,

    544 U.S. 280 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim.*

*Franceschi v. Schwartz,* 57 F.3d 828 (9th Cir. 1995) . . . . . . . . . . .    16

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP,*

    615 F.3d 159, 166 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . .    20

*Griswold v. Connecticut*, 381 U.S. 479 (1965) . . . . . . . . . . . . . . .    8

*Hess v. Port Authority Trans-Hudson Corporation,*

    513 U.S. 30, 31 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim.*

*Hoblock v. Albany Cnty.,* 422 F.3d 77, (2d Cir. 2005) . . . . . . . . . . .  20, 21

*Lance v. Dennis*, 546 U.S. 459, 464 (2006) . . . . . . . . . . . . . . . . . .  20, 21

*Lawrence v. Dep't of Interior*, 525 F.3d 916 (9th Cir. 2008) . . . . . . .    9

*Lewis v. United States*, 641 F.3d 1174, 1176 (9th Cir. 2011) . . . . . .    9

*Loving  v. Virginia*, 897 U.S. 113 (1967) . . . . . . . . . . . . . . . . . . . .    8

*Malhan v. State Dept.*, (2019), No. 18-3373,

    Third Circuit, (New Jersey) . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

*McClellan v. Carland*, 217 U. S. 268 (1910) . . . . . . . . . . . . . . . . .    21

*McCormick v. Braverman*, 451 F.3d 382, (6th Cir. 2006) . . . . . . . . .   20

*McKithen v. Brown,* 481 F.3d 89, 97 (2d Cir. 2007) . . . . . . . . . . . .   19

*Meyer vs. Nebraska*, 262 U.S. 390 (1923) . . . . . . . . . . . . . . . . . . . . . *passim.*

*Moccio v. New York State Office of Court Admin.*,

    95 F. 3d 195, (CA2 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Parham vs. J.R.*, 442 U.S. 584 (1979) . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Prince vs. Mass.*, 321 U.S. 158, 166 (1944) . . . . . . . . . . . . . . . . . . . . .   7

*Quilloin vs. Walcott*, 434 U.S. 246 (1978) . . . . . . . . . . . . . . . . . . . . . .   2

*Roberts v. United States Jaycees*, [468 U.S. 609 (1984) . . . . . . . . . .   3, 4

*Rooker v. Fidelity Trust Co.*, 263 U. S. 413 (1923) . . . . . . . . . . . . . . .   17

*Rotary Int'l vs. Rotary Club of Duarte*, 481 U.S. 537 (1987) . . . . . . . .   3, 4

*Santosky vs. Kramer*, 455 U.S. 745 (1982) . . . . . . . . . . . . . . . . . . . . .   3

*Smith vs. Org. of Foster Families*, 431 U.S. 816 (1977) . . . . . . . . . . .   2

*Stanley vs. Illinois*, 405 U.S. 645 (1972) . . . . . . . . . . . . . . . . . . . . . .   2

*Stump v. Sparkman*, 435 U.S. 349 (1978) . . . . . . . . . . . . . . . . . . . . .   9, 10

*Torres v. Judicial Council of California,* [No. 17-cv-0028

    JM (JLB), 2017 (S.D. Cal. Apr. 6, 2017)] . . . . . . . . . . . . . . . . . . . .   15

*Troxel vs. Granville*, 530 U.S. 57 (2000) . . . . . . . . . . . . . . . . . . . . . .   3, 4, 6

*VanderKodde v. Mary Jane M. Elliott, P.C.*,

    951 F.3d 397 402 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . . . . .   8

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) . . . . . . . . . . . . . . .   15

\*     \*     \*

**FRAP  28-2.2 – Statement of Jurisdiction**

(a)    The statutory basis of subject matter jurisdiction of the district court or agency: <u>28 U.S.C. 1331</u>.

(b)    The basis for claiming that the order appealed from is final or otherwise appealable:  <u>The order, (Mar. 18, 2024), granting the motion to dismiss, is a final order because it disposes of Plaintiffs' claims set forth in the *First Amended Complaint*</u>.  The statutory basis of jurisdiction of this Court:  <u>FRAP 4</u>.

(c)    The date of entry of the judgment: <u>Mar. 20, 2024</u>.  The date of filing of the notice of appeal: <u>April 17, 2024</u>.  The statute or rule under which it is claimed the appeal is timely:  <u>FRAP 4(a)(1)(A)</u>.

**FRAP 28(a)(4) – Jurisdictional Statement**

(A)    The basis for the district court subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction: <u>28 U.S.C. 1331</u>.  Plaintiffs' substantive claims regarding the right to parent "arise under" the First and Fourteenth Amendments.

(B)    The basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction:  <u>FRAP 4</u>. Plaintiffs appeal an order, (Mar. 18, 2024), granting Defendants' motion to dimiss.

(C)    the filing dates establishing the timeliness of the appeal or petition for review:  The date of the order granting the motion to dimiss is: <u>Mar. 18, 2024</u>. The date of entry of the judgment is: <u>Mar. 20, 2024</u>.  The date of filing of the notice of appeal: <u>April 17, 2024</u>.

(D)    This appeal is from a final order, (Mar. 18, 2024), which grants Defendants' motion to dismiss and thus disposes of all Plaintiffs' claims in the *First Amended Complaint*.

## ISSUES PRESENTED

**First**, does judicial immunity apply?  No, because Plaintiff parents challenge no "judicial acts" by Hon. C.J. Guerrero, who is sued in her capacity as *Council Chair* of Defendant, JUDICIAL COUNCIL.  Frankly, Plaintiff parents purposely sought to avoid suing *any* judges (because judicial immunity is a "brick wall");  Plaintiff parents instead filed suit against state policymakers, JUDICIAL COUNCIL;  and, in order to properly sue JUDICIAL COUNCIL, Plaintiffs' attorney-of-record is informed and believes that one must name the *Council Chair* of the JUDICIAL COUNCIL, (Hon. C.J. Guerrero).

**Second**, does Eleventh Amendment immunity apply?  No, because the "state treasury criterion" provides there is no immunity for agencies that are "financially self-sufficient"—based on the fact that "financially self-sufficient" agencies will themselves pay-out on prospective liablity judgments, (instead of the pay-outs originating from state treasuries).

**Third**, does *Rooker-Feldman* apply?  No, because Plaintiff parents are *not* challenging "final state-court judgments."

**Fourth**, do Plaintiff parents allege a viable *Monell* claim?  Yes; Plaintiff parents challenge Defendant's judicial family court policies—which ignore U.S. Supreme Court child-custody precedent, [*see Request for Judicial Notice of U.S. Supreme Court Points & Authorities*; (**E.R.–27**)].

\*     \*     \*

STATEMENT *of the* CASE

## I.  Relevant Issues.

Defendant, JUDICIAL COUNCIL is the policy-making body for California courts.  Plaintiffs are "fit" parents, *i.e.*, they've never been found "unfit." Plaintiffs challenge Defendant's policy of *not* training judges—***first***, that "parenting" is a fundamental right, [<u>Meyer vs. Nebraska</u>, 262 U.S. 390 (1923)], and ***second***, that the Constitution forbids physical custody orders that grant no "actual parenting time" — *unless a parent is found 'unfit'* — *i.e.*, with clear and convincing evidence of actual harm to a minor child, pursuant to a properly noticed fitness proceeding brought by the State, (**E.R.–100**).

Plaintiff parents seek an injunction requiring Defendants to train its judicial officers, ***first***, that "parenting" is a fundamental right, and ***second***, that the Constitution forbids physical custody orders that grant no "actual parenting time" — *unless a parent is found 'unfit'* — with actual harm to a minor child, which is the constitutional minimum required to divest a parent's custodial rights, (**E.R.–100**).

In the 14th Amendment, the term *liberty* denotes — "not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and ***bring up children*** … and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men," [<u>Meyer vs. Nebraska</u>, 262 U.S. 390, 399 (1923); (bold italics added)], (**E.R.–100**).

Under U.S. Supreme Court precedent, state courts may not issue physical custody orders that grant no "actual parenting time" to a parent — *unless that parent is found 'unfit'* — with clear and convincing evidence of actual harm to a minor child, [*see* <u>Stanley vs. Illinois</u>, 405 U.S. 645 (1972); <u>Smith vs. Org. of Foster Families</u>, 431 U.S. 816 (1977); <u>Quilloin vs. Walcott</u>,

434 U.S. 246 (1978); _Parham vs. J.R._, 442 U.S. 584 (1979); and, _Santosky vs._
_Kramer_, 455 U.S. 745 (1982)], (**E.R.–101**).

"Actual parenting time" happens only when parents have the actual
ability to exercise (a) **_care, custody, and control_** of their children, and (b)
**_private familial speech_** with their children. But here, the State wrongfully
dispossessed Plaintiff parents of these fundamental rights — _despite the fact_
_that they've never been found 'unfit'_ — _i.e._, no findings of (i) child abuse, (ii)
child neglect, (iii) abandonment, or (iv) endangerment, (**E.R.–101**).

While the 14th Amendment guarantees the right of Plaintiff parents
to "bring up children," the 1st Amendment guarantees the right to "familial
association," including private familial speech. Where, as here, custody
orders contain a blanket prohibition that forbids "fit" parents from speaking
privately with their children, it results in unconstitutional **_time, place and_**
**_manner_** restrictions, (**E.R.–101**). Where, as here, noncustodial parents —
who are otherwise "fit" — are wrongfully subjected to physical custody orders
that grant no "actual parenting time," it violates the noncustodial parent's
right to "bring up children" — by precluding their ability to exercise **_care,_**
**_custody, and control_**, [_Troxel vs. Granville_, 530 U.S. 57 (2000)]; so too, it
violates the right to "familial association" — by precluding the parent's ability
to exercise **_private familial speech_**, [_Rotary Int'l vs. Rotary Club of Duarte_,
481 U.S. 537 (1987), (**E.R.–102**); _see also_, _Roberts v. United States Jaycees_,
468 U.S. 609 (1984)].

Where, as here, physical custody orders grant no actual parenting time
to parents who are otherwise "fit," it necessarily infringes upon fundamental
rights that the 1st and 14th Amendments guarantee, (**E.R.–102**).

Notably, where family courts require "supervised visitation," it leaves
noncustodial parents with no "actual parenting time." During supervised
visits — _the State is in control_ — in decidedly prison-like settings — where

noncustodial parents have, (a) no actual ability to exercise **care, custody, and control**, (which deprives 14th Amendment rights), and (b) no actual ability to exercise **private familial speech**, (which deprives 1st Amendment rights), (**E.R.–102**).

The stark reality is that, when courts issue "supervised visitation" orders, (and "no-contact" orders), the noncustodial parents enjoy zero parental rights. Where courts deprive a parent's 14th Amendment right to **care, custody, and control** of their children, as well as their 1st Amendment right to **private familial speech**, it effectively severs the parent-child relationship, (**E.R.–102**).

Where physical custody orders grant no "actual parenting time" to noncustodial parents — who are otherwise "fit" — the noncustodial parents suffer **constructive termination** — *i.e.*, of the most cherished fundamental rights, (a) the right to "bring up children," [14th Amendment], and, (b) the right to "familial association," [1st Amendment], (**E.R.–102**).

Where physical custody orders grant no "actual parenting time" to "fit" parents — such orders run contrary to public policy. Under such restrictive orders, noncustodial parents have no actual ability to "parent" their children (in any meaningful sense), nor are their children actually "being parented" (in any meaningful sense); and, this comes with lifetimes of severe mental and emotional trauma for the parents and children, (**E.R.–103**).

Plaintiff parents invoke (a) their 14th Amendment right to "bring up children," *i.e.*, **care, custody and control**, [Troxel vs. Granville, 530 U.S. 57 (2000)] — and (b) their 1st Amendment right to "familial association," *i.e.*, **private familial speech**, (*e.g.*, to pray together, do homework together, and lead by example on a daily basis), [Rotary Int'l vs. Rotary Club of Duarte, 481 U.S. 537, 544 (1987), (**E.R.–103**); *see also*, Roberts v. United States Jaycees, 468 U.S. 609 (1984)].

Today, family court judges issue physical custody orders that grant no "actual parenting time" to "fit" parents — and for the flimsiest of reasons — based only on arbitrary discretion — *with no findings of 'unfitness.'* And this is unconstitutional.  With no findings of "unfitness," there can be no legal or factual basis to strip a parent of "actual parenting time," (**E.R.–103**).

Defendants maintain a policy of *not* training judges that parenting is a fundamental right, [*see* <u>Meyer vs. Nebraska</u>, 262 U.S. 390 (1923)], and this results in continuous and ongoing violations of federally protected civil rights, which are so prevalent, so commonplace, and so regularized, as to become *de facto* judicial policy statewide, (**E.R.–103**).

Defendants fail to train judges that "fit" parents are entitled to "actual parenting time" and that the Constitution forbids physical custody orders that grant no "actual parenting time" — *unless a parent is found 'unfit'* — based on clear and convincing evidence of actual harm to a minor child, *i.e.*, (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment. (**E.R.–103**).

As per U.S. Supreme Court precedent, where parents are "fit," courts must grant equal parenting time — *precisely because there are no findings of 'unfitness' as to either parent* — *i.e.*, no findings of actual harm to a minor child — meaning no findings of: (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment, (**E.R.–104**).

And, in those unhappy instances where parents are found "unfit," courts must undertake *strict scrutiny* analysis — to determine whether the taking of parental rights was ***narrowly tailored***, *i.e.*, "*Is this custodial timeshare the least-restrictive plan possible?*" (**E.R.–104**).

Notably, when the courts deprived Plaintiffs of their parental rights, the judges undertook no "strict scrutiny" analysis.  Plaintiffs' custody orders reveal no judicial effort to ***narrowly tailor*** the taking of Plaintiffs' parental

rights — and no enquiry into whether the parties' custodial timeshare plans are the ***least-restrictive*** possible, (**E.R.–104**).  (Standing alone, the fact of no "strict scruntity" analysis—is reason enough to grant the appeal.)

Where there are two "fit" parents, there can be no legal basis to issue physical custody orders that grant no parenting time to one parent (or the other)—precisely because there are no findings of "unfitness," (**E.R.–104**).

The *Troxel Fitness Presumption* provides: "[t]here is a presumption that fit parents act in their children's best interests," [*Troxel vs. Granville*, 530 U.S. 57, 58 (2000)], (**E.R.–104**).  And, Plaintiffs are "fit" parents!

Where physical custody orders grant no "actual parenting time" — *and there's no showing of 'unfitness'* — such orders are unconstitutional *per se*. Unequal custodial timeshares *do not* pass constitutional muster.  The Equal Protection Clause demands *equal* custodial timeshares, *first*, because two "fit" parents are "similarly situated," and *second*, because the *Troxel Fitness Presumption* applies to both parents equally, (**E.R.–105**).

Tragically, Defendants' family court policies grant unto Plaintiffs ***fewer*** parental rights than the ***minimum*** constitutional guarantee, (**E.R.–105**).

Modernly, in determining custody issues, family court judges exclusively, and wrongfully, rely on the "***best interest***" standard; *however*, Plaintiff parents argue that a child's constitutional "***right to be parented***" is indeed paramount to a child's supposed "***best interests***" (whatever those might be).  Plaintiff parents reiterate that the Constitution, *of course*, is the *Supreme Law of the Land*, (**E.R.–105**).

Plaintiff parents argue that, where family court judges make custodial determinations based solely on the discretionary ***best interests standard*** — with no regard for ***constitutional standards*** — it robs the parents of *minimum* constitutional guarantees, (**E.R.–105**).

1
2
3
4
5
6
7

As a threshold matter, Plaintiff parents contend that family court judges lack subject-matter jurisdiction to decide a child's "best interests"; where two parents are "fit," the state lacks authority to meddle in private family relationships; *as a matter of law*, "the custody, care and nurture of the child reside first in the parents," [*Prince vs. Mass.*, 321 U.S. 158, 166 (1944)]. Unless there are findings of unfitness, states may not enter "the private realm of family life," [*id.*], (**E.R.–105**).

8
9
10
11
12
13
14
15

Defendant, JUDICIAL COUNCIL, maintains a policy of *not* training judges that parenting is a fundamental right, [*see* *Meyer vs. Nebraska*, 262 U.S. 390 (1923)]. In addition, Defendant, JUDICIAL COUNCIL, further fails to train judges that "fit" parents are entitled to "actual parenting time"—and, that the Constitution forbids physical custody orders that grant no "actual parenting time" — *unless a parent is found 'unfit'* — based on clear and convincing evidence of actual harm to a minor child, *i.e.*, (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment, (**E.R., 108–109**).

16
17
18
19

Plaintiff parents seek court orders that require Defendant, JUDICIAL COUNCIL to train judicial officers, ***first***, that parenting is a fundamental right, and, ***second***, that courts may not issue physical custody orders that grant no "actual parenting time" — absent findings of "unfitness," (**E.R., 109**).

20
21

## II.   Procedural History.

22
23
24
25
26

On Mar. 18, 2024, the U.S. District Court issued an *Order*, (**E.R.–4**), summarily granting Defendant's *Motion to Dismiss*, (**E.R.–45**). On Apr. 17, 2024, Plaintiff parents filed a *Notice of Appeal*, (**E.R.–113**), to the *Ninth Circuit*. On May 21, 2024, the District Court dismissed Plaintiffs' case. / / / /

27
28

### III.    Unsigned Minute Order.

The *Order*, (**E.R.–4**), is an *unsigned* minute order, (Mar. 18, 2024), *i.e.*, it bears no judicial signature.  The *Order*, (**E.R.–4**), indicates only that "the motion is granted" — in reference to Defendant's *Motion to Dismiss*, (**E.R.–45**).

### IV.    Strict Scrutiny Analysis.

Before a state may lawfully infringe upon constitutional rights, a judge must engage in "strict scrutiny" analysis, (**E.R.–104**), by identifying a ***compelling governmental interest*** sufficient to justify the impairment, restriction, or termination, [*see*, *e.g.*, <u>*Griswold v. Connecticut*</u>, 381 U.S. 479 (1965); <u>*Loving v. Virginia*</u>, 897 U.S. 113 (1967); *see also*, <u>*Wisconsin v. Yoder*</u>, 406 U.S. 205 (1972)].

In family courts, when judges dispossess parental rights, here's what "strict scrutiny" analysis *should* look like—

***one***, before infringing on parental rights, the judge must identify a ***compelling gov't interest*** in the infringement;

***two***, once a compelling gov't interest is identified, the judge must establish a ***causal connection*** between the contemplated infringement and the purported gov't interest, (*i.e.*, will the infringement actually further and advance the stated gov't interest?);

***three***, if the first two prongs are met, the judge must determine whether the infringement on the individual's "right to parent" has been ***narrowly tailored*** to effectuate ***only*** the stated gov't interest, (**E.R.–104**);

***four***, if the first three prongs are met, the judge must then determine whether there are any ***less-restrictive alternatives*** to achieving the stated gov't interest, (**E.R.–104**).  And, finally, if all four prongs are met, then the infringement is deemed legit—because the infringement is deemed indispensable to the American regime of ordered liberty.

## V.    Issues on Appeal.

*First*, judicial immunity is here inapplicable because Plaintiff parents challenge no "judicial acts" by Hon. C.J. Guerrero, (**E.R.–63**).  Judicial immunity applies, *if at all*, to "judicial acts"; but here, Plaintiff parents challenge no "judicial acts," [*see* <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978)],

*Second*, Eleventh Amendment immunity is here inapplicable based on the "state treasury criterion"; there is no agency immunity for Defendant JUDICIAL COUNCIL because prospective judgments, Plaintiffs believe, would be paid-out by the agency—instead of the State Treasury.  Plaintiff parents contend that Defendants are "financially self-sufficient," (**E.R.–63**).

*Third*, *Rooker-Feldman* is here inapplicable because Plaintiff parents are *not* challenging "final state-court judgments," (**E.R.–63**).

*Fourth*, Plaintiffs' FAC, (**E.R.–98**), alleges a viable *Monell* claim. Plaintiff parents challenge family court judicial policies that ignore U.S. Supreme Court child-custody precedent, [*see Request for Judicial Notice of U.S. Supreme Court Points & Authorities*; (**E.R.–27**)], (**E.R.–63**).

## VI.   De Novo Review.

This appeals concerns issues of law; *therefore*, Plaintiff parents seek *de novo* review on appeal.  *De novo* review means that the court views the case from the same position as the district court, [*see* <u>Lawrence v. Dep't of Interior</u>, 525 F.3d 916, 920 (9th Cir. 2008); *see also* <u>Lewis v. United States</u>, 641 F.3d 1174, 1176 (9th Cir. 2011)].

## VII.  Relief Sought on Appeal.

Plaintiff parents *respectfully* request that this Court OVERTURN the District Court *Order*, (**E.R.–4**), granting Defendant's *Motion to Dismiss*, (**E.R.–45**).  Plaintiff parents must be allowed to proceed with their claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUMMARY *of* ARGUMENTS

**VIII.  Does Judicial Immunity Apply?  (No.)**

Plaintiff parents are not trying to hold C.J. Guerrero liable for any "judicial acts"; *rather*, Plaintiffs are fit parents who challenge statewide child-custody "policies" set by Defendant, Judicial Council.  The *First Amended Complaint*, ("FAC"), (**E.R.–98**), alleges, at par. 31, (**E.R.–103**)—

> "Defendants maintain a policy of ***not training judges*** that parenting is a fundamental right, [*Meyer vs. Nebraska*, 262 U.S. 390 (1923)], and this has tragic and deleterious consequences; it results in ***continuous and ongoing violations*** of federally protected civil rights, which are so ***prevalent***, so ***commonplace***, and so ***regularized***, as to become ***de facto judicial policy statewide***," [*First Amended Complaint*, ("FAC"), (**E.R.–98**), at ¶ 31; (**E.R.– 103**), (bold italics added)], (*see discussion,* **E.R.–49**).

In the FAC, (**E.R.–98**), at par. 3, (**E.R.– 99**), C.J. Guerrero is sued, "*in Her Honor's **Official Capacity as Council Chair** for the Judicial Council of California*," [*see* FAC, ¶ 3; (bold italics added)], (**E.R.– 99**).  Plaintiff parents are *not* suing C.J. Guerrero for any acts undertaken or neglected. (**E.R.–49**).  Rather, Plaintiffs challenge unconstitutional state "policies," which allow judges statewide to divest custodial right, *en masse*, in a manner inconsistent with U.S. Supreme Court precedent, (*see* **E.R.–27**).

Plaintiff parents bring suit against C.J. Guerrero, *respectfully*, in her capacity as a "figurehead."  Plaintiffs named C.J. Guerrero because she is the "Council Chair," ("figurehead"), of Judicial Council, which is responsible for making judicial policy in California; *however*, Plaintiffs challenge no "judicial acts" by the good Chief Justice; *therefore*, immunity *does not* here apply, [*see, e.g.*, *Stump v. Sparkman*, 435 U.S. 349 (1978)], (**E.R.–50**).

The doctrine of judicial immunity *does not* apply to this case. Plaintiff parents sue the JUDICIAL COUNCIL for its "judicial policies," which operate outside of well-established, U.S. Supreme Court child-custody doctrines, (**E.R.– 50**), [*see Request for Judicial Notice of U.S. Supreme Court Points & Authorities*, (**E.R.– 27**)].

In sum, Plaintiff parents challenge statewide "policies" which result in rampant judicial kidnappings statewide, (**E.R.– 50**).

Sadly, parents and children are separated at county courthouses statewide. Although the "right to parent," (and the children's "right to be parented"), are fundamental rights, family courts divest these rights absent due process—in a most industrialized fashion. These violations occur because family court judges never learn U.S. Supreme Court precedent on the "right to parent"—or that custodial rights may not be divested absent a showing of actual harm to a minor, (**E.R.– 50**), *see Request for Judicial Notice of U.S. Supreme Court Points & Authorities*], (**E.R.– 27**).

### IX.    Does Eleventh Amendment Immunity Apply?  (No.)

Defendant JUDICIAL COUNCIL'S claims of Eleventh Amendment immunity *do not* here apply. As per U.S. Supreme Court precedent—

"[m]ost Federal Courts of Appeals have identified the ***'state treasury' criterion***—whether a judgment against the entity ***must be satisfied*** out of a State's treasury—as the ***most important consideration*** in determining whether a state-created entity qualifies for Eleventh Amendment immunity."

[*See* <u>*Hess v. Port Authority Trans-Hudson Corporation*</u>, 513 U.S. 30, 31 (1994); (bold italics added)], (**E.R.– 51**).

Back in 1994, Justice Ruth Bader Ginsburg, in <u>Hess</u>, held that defendant *Port Authority* was, "not entitled to Eleventh Amendment immunity from suit in federal court," [<u>Hess</u>., at 31], (**E.R.– 51**).

In deciding <u>Hess</u>, the U.S. Supreme Court relied on the "state treasury criterion"—which asks "whether a judgment against the entity must be satisfied out of a State's treasury," [*id*., at 31]: (*i.e.*, "*Must the state treasury pay-out on a prospective judgment?*"), (**E.R.– 51**).

The U.S. Supreme Court recognizes the "***state treasury criterion***" as the "***most important consideration*** in determining whether a state-created entity qualifies for Eleventh Amendment immunity," [*see* <u>Hess v. Port Authority Trans-Hudson Corporation</u>, 513 U.S. 30, 31 (1994); (bold italics added], (**E.R.– 51**).

In <u>Hess</u>, J. Ginsburg ruled that *Port Authority* is *not* an "arm of the state" for purposes of the Eleventh Amendment.  J. Ginsburg reasoned that a judgment against *Port Authority* mustn't be paid by a state treasury.  Indeed, the same sound reasoning should here apply, (**E.R.– 51**).

In <u>Hess</u>, J. Ginsburg explains— "[w]here, as here, the States are neither legally nor practically obligated to ***pay the entity's debts***, ***the Eleventh Amendment's core concern is not implicated***," [*see* <u>Hess v. Port Authority Trans-Hudson Corporation</u>, 513  U.S. 30, 31 (1994); (bold italics added)], (**E.R.– 52**).

Under the "state treasury test," J. Ginsburg concluded that defendant agency, *Port Authority*, was *not* entitled to Eleventh Amendment immunity— because it was deemed to be "***financially self-sufficient: it generates its own revenues and pays its own debts***," [*see* <u>Hess v. Port Authority Trans-Hudson Corporation</u>, 513 U.S. 30, 31 (1994); (bold italics added)].  The same is true for Defendant, JUDICIAL COUNCIL —it is financially self-sufficient: it generates its own revenue and pays its own debts, (**E.R.– 52**).

The FAC, par. 60, (**E.R.–109**), Plaintiffs alleges, "***Judicial Council is financially self-sufficient***," [FAC, ¶ 60; (**E.R.–109**), (bold italics added)]. This Court, *respectfully*, must accept, as true, the allegation that Judicial Council is "***financially self-sufficient***"; and, *therefore*, Eleventh Amendment immunity *does not* here apply, [*see* <u>Hess</u>, (*id*.)], (**E.R.– 52**).

The FAC, par. 60, (**E.R.–109**), also alleges, "***Judicial Council … generates its own revenues [and] pays its own debts***," [*see* FAC, ¶ 60; (**E.R.–109**), (bold italics added)].  This Court, *respectfully*, must accept, as true, the allegation that "Judicial Council … ***generates its own revenues*** [and] ***pays its own debts***"; *therefore*, Eleventh Amendment immunity *does not* apply, [*see* <u>Hess</u>, (*id*.); (bold italics added),] (**E.R.– 52**).

Notably, Defendant, Judicial Council pays the legal bills for opposing counsels, at BB&K.  This tends to suggest that Judicial Council is capable of "***paying its own debts***"; *therefore*, presumptively, Eleventh Amendment immunity *does not* here apply, [*see* <u>Hess</u>, (*id*.)], (**E.R.– 52**).

Plaintiffs should be allowed the opportunity to take limited discovery on the following issues—

    (a)    is Judicial Council "financially self-sufficient?";

    (b)    does Judicial Council "generate its own revenue?";

    (c)    does Judicial Council "pay its own debts?";

    (d)    is there any insurance coverage that may pay-out on a prospective judgment?; and,

    (e)    who will pay-out on a prospective judgment?— Judicial Council?—State Treasury?—Ins. Co.?; (**E.R.–53**).

Plaintiffs note the conspicuous absence of Rob Bonta's office in this litigation.  Curiously, the *Attorney General* (Rob Bonta) is *not* defending the (supposed) state agency.  Frankly, in state-agency litigation, one expects to

see the *Attorney General*.  But not here.  Instead, we see a "private" firm —

defending what appears to be a "private" entity, (**E.R.–53**).

The use of a "private" law firm, (BB&K), instead of the State's *Attorney General*, suggests the State Treasury is *not* paying to defend this lawsuit. Again, opposing counsel admits, in writing, that Defendant, Judicial Council pays BB&K legal bills, which tends to show that Judicial Council is "financially independent" within the meaning of <u>Hess</u>, [*id*., (*see supra*)], and thus, *not* entitled to sovereign immunity, (**E.R.–53**).

Plaintiff parents attached, to their opposition, (**E.R.–53**), as Exhibit No. "1," (**E.R.–66** ), a *Dun & Bradstreet* report which indicates that Judicial Council, as a parent corporation, owns and operates approx. 585 subsidiary county courts — with approx. 585 separate *Dun & Bradstreet* numbers, ("DUNS"), (*see* **E.R.–66**).

*Dun & Bradstreet* is a global company that analyzes business credit scores.  *Dun & Bradstreet* sells products to its clients to improve profits, marketing, and risk management.  These approx. 585 DUNS numbers, (*see* **E.R.–66**), are related to Defendant, Judicial Council, in connection with its subsidiary county courts — which, it would appear, independently purchase goods and services, and contract for debt, *etc*., (**E.R.–54**).

The fact of the *Dun & Bradstreet* numbers, ("DUNS"), (**E.R.–66**) tends to suggest that Defendant, Judicial Council is "financially self-sufficient"— because, *apparently*, Judicial Council, (through its local subsidiaries), makes credit purchases and contracts indebtedness—independent of the State Treasury, (**E.R.–54**).

Again, the Court is required to presume the truth of the allegations. Again, the FAC, (at ¶ 60), (*see* **E.R.–109**), alleges that Judicial Council is, "***financially self-sufficient*** … [and] ***it has a Dun & Bradstreet number***," [FAC, (¶ 60); (bold italics added), (*see* **E.R.–109**)].  These facts, *when*

*presumed true*, establish that JUDICIAL COUNCIL is "financially self-sufficient" and wholly independent of the State Treasury, (**E.R.–54**).

The *State Treasury Criterion* asks whether a judgment against the agency ***must*** be satisfied out of the State Treasury; here, it appears the answer would be "no"—because there's no requirement that payment "must" come from the State Treasury; *therefore*, under <u>Hess</u>, [*id.*], Eleventh Amendment immunity *does not* apply, (**E.R.–54**).

Plaintiff parents rely on <u>Hess</u>, a ***U.S. Supreme Court*** case—from **1994**. And, although Defendants cite many persuasive ***Ninth Circuit***, curiously, none mention <u>Hess</u>, which is controlling, (**E.R.–55**).

Plaintiff parents reiterate that <u>Hess</u> is paramount to Ninth Circuit authorities because it's a **1994 *U.S. Supreme Court*** case. Plaintiffs here analyze Defendants' *inferior* case citations—

<u>Wolfe v. Strankman</u>, [392 F.3d 358, 364 (9th Cir. **2004**)]. Yes, this Ninth Circuit decision concludes that JUDICIAL COUNCIL is an immune state agency; *however*, notably, in <u>Wolfe</u>, the Calif. Att'y Gen., (not a private law firm), represented the state agency. Most remarkably, <u>Wolfe</u> never mentions (i) the **1994 *U.S. Supreme Court*** decision in <u>Hess</u>, nor does it mention (ii) the "state treasury criterion," or (iii) the "financial independence" test, (*i.e.*, does the agency generate its own revenue?—pay its own debts?), (**E.R.–55**).

<u>Torres v. Judicial Council of California</u>, [No. 17-cv-0028 JM (JLB), 2017 WL 1281914, (S.D. Cal. Apr. 6, **2017**)]. Yes, this district court decision concludes that JUDICIAL COUNCIL is an immune state agency; *however*, notably, all the attorneys involved are gov't attorneys. Remarkably, <u>Torres</u> never mentions (i) the **1994 *U.S. Supreme Court*** decision in <u>Hess</u>, nor does it mention (ii) the "state treasury criterion,"

or (iii) the "financial independence" test, (*i.e.*, does the entity generate its own revenue?—pay its own debts?), (**E.R.–55**).

*Ervin v. Judicial Council of California*, [No. C 08-0299 PJH, 2008 WL 1885726, (N.D. Cal. Apr. 24, **2008**)]. Yes, this district court decision concludes that JUDICIAL COUNCIL is an immune state-agency; *however*, this case never mentions (i) the **1994 *U.S. Supreme Court*** decision in *Hess*, nor does it mention (ii) the "state treasury criterion," or (iii) the "financial independence" test, (**E.R.–55**).

*Franceschi v. Schwartz*, [57 F.3d 828, 831 (9th Cir. 1995)]. Yes, this district court decision concludes that JUDICIAL COUNCIL is immune; *however*, this case never mentions (i) the **1994 *U.S. Supreme Court*** decision in *Hess*, nor does it mention (ii) the "state treasury criterion," or (iii) the "financial independence" test, (**E.R.–56**).

Notably, Defendants' *Motion to Dismiss*, ("MTD"), (**E.R.–85**). never mentions *Hess*. But Plaintiffs believe *Hess* is too important not to mention—because *Hess* is controlling, (**E.R.–56**).

Defendant JUDICIAL COUNCIL is no different than the *Port Authority* in *Hess*; (i) both entities are "state-created," (ii) both are "financially self-sufficient," and (iii) neither are entitled to Eleventh Amendment immunity, [*see Hess*, *id.*], (**E.R.–56**).

Both Defendant JUDICIAL COUNCIL and *Port Authority* are fairly characterized as "state-created" agencies. Defendant, JUDICIAL COUNCIL will argue that it is somehow different—compared to the *Port Authority* entity; but the only real difference is that *Port Authority* was created by two states—New York and New Jersey, while, in contrast, JUDICIAL COUNCIL was created by one, California; *however*, this distinction is of no moment, (**E.R.–56**).

Taken together, defendant *Port Authority* in *Hess*—and Defendant JUDICIAL COUNCIL herein—are substantially similar. Sure, the opponents

may argue that the federal gov't helped to create the *Port Authority*; but still, this *does not* affect the main consideration upon which J. Ginsburg relied in her well-reasoned decision in <u>Hess</u>, *i.e.*, whether a prospective pay-out would come from a financially self-sufficient agency — or from the state's treasury, [*see* <u>Hess</u>, (*id.*)], (**E.R.–56**).

The fact that the federal gov't participated in the creation of the *Port Authority* does not affect the "state treasury criterion" test — which is concerned with how a given agency funds prospective pay-outs — *not* with how that given entity happened to be birthed, (**E.R.–57**).

## X. Does *Rooker-Feldman* Apply? (No.)

Predictably, Defendants raise the overused *Rooker-Feldman* defense; *however*, *Rooker-Feldman* does not here apply. Plaintiff parents seek redress because their constitutional rights were violated—they are *not* seeking judicial review of final state court judgments, (**E.R.–57**).

*Rooker-Feldman* conflicts with the familiar maxim that federal courts have a "virtually unflagging" duty to exercise jurisdiction conferred by Congress, [*see*, *e.g.*, <u>Malhan v. State Dept., (2019)</u>, No. 18-3373, Third Circuit, (New Jersey), citing <u>Colorado River Water Conservation Dist. v. U.S.</u>, 424 U.S. 800, 817, (1976), (**E.R.–57**).

Notably, the U.S. Supreme Court has only ever applied the *Rooker-Feldman* doctrine twice, first in <u>Rooker v. Fidelity Trust Co.</u>, [263 U. S. 413 (1923)], then, 60 years later, in <u>District of Columbia Court of Appeals v. Feldman</u>, [460 U. S. 462 (1983)]. "Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U. S.

C. §1738. [*See*, *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), citing *Moccio v. New York State Office of Court Admin.*, 95 F. 3d 195, 199–200 (CA2 1996)], (**E.R.–57**).

Yes, federal district courts may not exercise jurisdiction over final state-court judgments, [*see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291, (2005)]. But the individual *Rooker* and *Feldman* cases are unique; here, Plaintiffs are challenging statewide judicial "policy" which led to unconstitutional judicial kidnappings, (**E.R. 57–58**).

As J. Ginsburg explains, the "limited circumstances" described in *Exxon* have arisen only twice in the Supreme Court—in *Rooker* and *Feldman*. Plaintiff parents argue that federal courts too liberally apply the doctrine to bewildered parents—who come to federal court praying for relief from family court civil rights deprivations, (**E.R.–58**).

Back in 2005, the Supreme Court decided *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, [544 U.S. 280 (2005)]. In *Exxon*, the Supreme Court reversed the expansive interpretation of *Rooker-Feldman* and J. Ginsburg confined it to "limited circumstances"—

[1] "cases brought in federal court by state-court losers";

[2] "complaining of injuries caused by final state-court judgments";

[3] "where the state-court judgment was rendered before the federal action commenced"; and,

[4] "inviting federal court review and rejection of those final state-court judgments."

[*See Exxon*, (*supra*), 544 U.S. 280, at 284, (2005), (**E.R.–58**).

Turning the Court's attention to prong number 1, (*supra*), Plaintiff parents are not "state-court losers." Their cases are continuous and ongoing. And, besides, there's not exactly "winners" or "losers" in family court, which is designed only to divvy-up family assets and timeshares of the children.

Generally speaking, there are no prevailing parties in family court; hence, Plaintiffs do not see themselves as "state-court losers" within the meaning of <u>Exxon</u>, [*id.*], (**E.R.–58**).

Plaintiffs' claims under Sec. 1983 do not function as *de facto* appeals of final state-court judgments. Rather, Plaintiffs challenge Defendants' continuous and ongoing, unconstitutional "policies," which are the proximate cause of their constitutional injuries, (**E.R. 58–59**).

Turning the court's attention to prong number 2, (*supra*), Plaintiffs are *not* complaining of "injuries caused by final state-court judgments," within the meaning of <u>Exxon</u>, [*id.*]; rather, they complain of civil rights violations caused by Defendant's unconstitutional judicial policies which ignore Supreme Court case law, [*see Request for Judicial Notice of U.S. Supreme Court Points & Authorities*, (*see* **E.R.–27**)], (**E.R.–59**).

The doctrine bars federal cases where plaintiffs attack the state judgment itself, seeking to overturn it, [*see*, <u>McKithen v. Brown</u>, 481 F.3d 89, 97 (2d Cir. 2007)]. But here, Plaintiffs are not attacking "final judgments"; rather, they are attacking unconstitutional, statewide judicial policies, which deprived them of their fundamental rights as "fit" parents—without ever having been declared "unfit" as per SCOTUS precedent, (**E.R.–59**).

Turning the court's attention to prong number 3, while family courts issue custody orders and divorce decrees, Plaintiff parents challenge no "final state-court judgments" within the meaning of <u>Exxon</u>, [*id.*], (**E.R.–59**).

Turning the court's attention to prong number 4, (*above*), Plaintiffs point-out they are *not* "inviting federal court review and rejection of [a] final state- court judgment"; rather, Plaintiffs want money damages for Defendants' unconstitutional policies, which cause civil rights violations; Plaintiffs also want personnel training to avoid future violations of other parents' rights, (**E.R.–59**).

Federal claims must be "inextricably intertwined" with the final state-court judgment for *Rooker-Feldman* to apply, [*see, e.g.*, <u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 166 (3d Cir. 2010)].  But Plaintiffs' claims are not "inextricably intertwined" with any final state-court judgments.  Rather, Defendants' unconstitutional "policies" are the source of Plaintiffs' claims, (**E.R. 59–60**).

As in <u>Exxon</u>, Plaintiffs do not directly contest the validity of any final state-court judgments, but rather, they challenge Defendants' policies that cause constitutional injury to multitudinous families statewide, (**E.R.–60**).

"If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a  state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion,' " [*see,* <u>Exxon Mobil Corp. v. Saudi Basic Indus.</u>, [544 U.S. 280, at 293 (2005)], (**E.R.–60**).

Under <u>McCormick v. Braverman</u>, [451 F.3d 382, 393 (6th Cir. 2006)] and <u>Lance v. Dennis</u>, [546 U.S. 459, 464 (2006)], final state-court judgments, essentially, must be the proximate cause of the alleged injury—in order for *Rooker-Feldman* to apply.  But here, the proximate cause of Plaintiffs' harm is Defendants' judicial policies.  The custody orders, (mostly temporary orders), are evidence of Defendants' unconstitutional policies—which systematically ignore U.S. Supreme Court child-custody precedent, (**E.R.–60**).

A suit would be barred by *Rooker-Feldman* "if it complains of injury from the state-court judgment and seeks review and rejection of that judgment," but not if it raises "some independent claim," (**E.R. 60–61**).  In <u>Hoblock</u>, the court explains—

"How do we determine whether a federal suit raises an independent, non-barred claim?  At first glance, one might think that a federal claim is independent of claims raised in state court if the federal claim is

premised on a ***theory not passed upon by the state court***.  Indeed, the voters make essentially this argument, asserting that Rooker-Feldman does not apply because the voters raise a Fourteenth Amendment argument and thus "are not seeking review of the state court's decision[,] which was strictly limited to state law. . . ." [_Hoblock v. Albany Cnty._, 422 F.3d 77, 86–88 (2d Cir. 2005); (bold italics added)].

_Rooker-Feldman_ does not stop a plaintiff from presenting an "independent claim," even if it denies a legal premise underlying a state court conclusion.  Plaintiffs raise independent constitutional claims—***not passed upon by the state court***.  If a plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion," [_Hoblock v. Albany County Board of Elections_, 422 F.3d 77, 86 (2d Cir. 2005)]. "Rooker-Feldman, we explained, is a narrow doctrine," [_Lance v. Dennis_, 546 U.S. 459 (2006), citing _Exxon_, at 284], (**E.R.–61**).

Rooker-Feldman does not bar a court "from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," [_VanderKodde v. Mary Jane M. Elliott, P.C._, 951 F.3d 397, 402 (6th Cir. 2020), citing _Exxon_, 293], (**E.R.–61**).

 "When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court.  This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' " [_Exxon Mobil Corp._, [544 U.S. 280, at 293 (2005) citing _McClellan v. Carland_, 217 U. S. 268, 282 (1910)], (**E.R. 61–62**).

/ / / /

### XI.     Do Plaintiffs State a Viable Monell Claim?  (Yes.)

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," [*Board of Comm'rs v. Brown*, 520 U.S. 397, 404, (1997)].  And, as the FAC, (**E.R.–98**) alleges, at par. 31, (**E.R.–103**)—

> "Defendants maintain a policy of ***not training judges*** that parenting is a fundamental right, [*Meyer vs. Nebraska*, 262 U.S. 390 (1923)], and this has tragic and deleterious consequences; it results in ***continuous and ongoing violations*** of federally protected civil rights, which are so ***prevalent***, so ***commonplace***, and so ***regularized***, as to become ***de facto judicial policy statewide***."  [*First Amended Complaint*, ("FAC"), (**E.R.–98**), at ¶ 31, (**E.R.–103**); (bold italics added)], (*see* **E.R.–62**).

In family courts, the judicial practice of ignoring U.S. Supreme Court child-custody precdent is "so widespread as to have the force of law," [*see* *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997), citing *Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 167-168 (1970)], (**E.R.–62**).

In family courts, there is widespread judicial disregard for the U.S. Constitution, [*see Request for Judicial Notice of U.S. Supreme Court Points & Authorities*, (**E.R.–27**)], (*see* **E.R.–62**).

/ / / /

/ / / /

/ / / /

## XII.  Summary & Conclusion.

***First***, judicial immunity is inapplicable because Plaintiffs challenge no "judicial acts" by Hon. C.J. Guerrero.

***Second***, Eleventh Amendment immunity is inapplicable based on the "state treasury criterion"; there is no agency immunity because prospective judgments from JUDICIAL COUNCIL would be paid-out by that agency—instead of the state treasury.  JUDICIAL COUNCIL is "financially self-sufficient," and thus subject to federal court litigation.

***Third***, *Rooker-Feldman* is inapplicable because Plaintiff parents are *not* challenging "final state-court judgments."

***Fourth***, Plaintiff parents have a viable *Monell* claim because they challenge statewide judicial policies that ignore U.S. Supreme Court child-custody precedent, [*see Request for Judicial Notice of U.S. Supreme Court Points & Authorities*, (**E.R.–27**)].

Plaintiff parents *respectfully* request that this Court OVERTURN the District Court *Order*, (**E.R.–4**), granting Defendant's *Motion to Dismiss*, (**E.R.–45**).  Plaintiff parents must be allowed to proceed with their claims.

Dated:  **July 3, 2024**              *Respectfully Submitted,*

*T. Matthew Phillips*
_____

T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
Telephone: (323) 314-6996
TMatthewPhillips@aol.com
*Appellants' Counsel*

\*      \*      \*

*Appellants' Opening Brief, p. 24 of 24*

## CERTIFICATE-OF-SERVICE

I am an individual over the age of eighteen and not a party to the within action.  My business address is 4894 W. Lone Mtn. Rd., No. 132, Las Vegas, Nev. 89130.  My phone number is (323) 314-6996.

On **July 3, 2024**, I served the following:

**Appellant's Opening Brief;**

on an interested party in the above-entitled action by

\_\_X\_\_ via e-mail transmission, (U.S. e-filing system)

\_\_\_\_\_ personal service on the person below listed,

\_\_\_\_\_ depositing it in the U.S. Mail, postage prepaid,

and addressed to the person below listed,

> **MATTHEW L. GREEN, Bar No. 227904**
> **BEST BEST & KRIEGER LLP**
> **655 West Broadway, 15th Floor**
> **San Diego, California 92101**
> **Telephone: (619) 525-1300**
> **Facsimile: (619) 233-6118**
> **matthew.green@bbklaw.com**

I declare under penalty of perjury under Nevada law, the foregoing is true and correct.

Dated: **July 3, 2024**


/s/ T. Matthew Phillips     .
Declarant