**No. 24-2537**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JASON D'SOUZA, et al.,

Plaintiffs-Appellants,

v.

HON. PATRICIA GUERRERO, Chief Justice of California and Chair of the Judicial Council of California,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of California, Western Division
Case No. 2:23-cv-08230-SVW-E
The Honorable Stephen V. Wilson

**ANSWERING BRIEF OF HON. PATRICIA GUERRERO**

Matthew L. Green, Bar No. 227904
matthew.green@bbklaw.com
BEST BEST & KRIEGER LLP
655 West Broadway, 15th Floor
San Diego, California 92101
Telephone: (619) 525-1300
Facsimile: (619) 233-6118

Attorneys for Defendant-Appellee
HON. PATRICIA GUERRERO, Chief
Justice of California and Chair of the
Judicial Council of California

# TABLE OF CONTENTS

**Page**

I.　INTRODUCTION ........................................................10

II.　STATEMENT OF JURISDICTION ...............................11

III.　STATEMENT OF ISSUES .........................................11

IV.　STATEMENT OF THE CASE .....................................13

　　A.　APPELLANTS' ALLEGATIONS................................13

　　B.　THE DISTRICT COURT'S DISMISSAL OF THE FAC .............14

V.　STANDARD OF REVIEW...........................................14

VI.　SUMMARY OF ARGUMENT.....................................15

VII.　ARGUMENT............................................................17

　　A.　NO SECTION 1983 LIABILITY LIES AGAINST THE CHIEF
　　　　JUSTICE BECAUSE SHE IS A STATE OFFICIAL .....................17

　　B.　APPELLANTS' SECTION 1983 CLAIM FOR DAMAGES IS
　　　　ALSO FORECLOSED BY THE ELEVENTH AMENDMENT ......19

　　C.　APPELLANTS' ATTACK ON CIRCUIT PRECEDENT
　　　　RECOGNIZING THE JUDICIAL COUNCIL IS A STATE
　　　　AGENCY IS UNAVAILING .........................................20

　　　　1.　CIRCUIT PRECEDENT HOLDS THAT THE
　　　　　　JUDICIAL COUNCIL IS A STATE AGENCY. ....................21

　　　　2.　*HESS* HAS NO APPLICATION IN THIS CASE....................22

　　　　3.　*KOHN* CONFIRMS THAT THE JUDICIAL COUNCIL
　　　　　　IS A STATE ENTITY. ............................................24

　　　　　　A.　THE STATE INTENDED THE JUDICIAL
　　　　　　　　COUNCIL TO BE A STATE ENTITY. .......................25

　　　　　　B.　THE JUDICIAL COUNCIL IS CONTROLLED
　　　　　　　　BY THE STATE..........................................28

　　　　　　C.　THE STATE TREASURY IS RESPONSIBLE
　　　　　　　　FOR FUNDING THE JUDICIAL COUNCIL.............30

25508.00152\42550045.1

**TABLE OF CONTENTS**
(continued)

**Page**

4.  THE JUDICIAL COUNCIL'S HIRING OF A PRIVATE LAW FIRM AND THE ABILITY TO INCUR DEBT ARE IMMATERIAL TO ELEVENTH AMENDMENT IMMUNITY. .......................................................... 32

D.  ADDITIONAL GROUNDS SUPPORT DISMISSAL OF THE ACTION ......................................................................... 34

1.  THE FAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST CHIEF JUSTICE GUERRERO. .............................. 34

2.  JUDICIAL IMMUNITY BARS APPELLANTS' CHALLENGE OF CHILD CUSTODY ORDERS. ............... 35

3.  APPELLANTS' ACTION IS ALSO PROHIBITED BY THE *ROOKER-FELDMAN* DOCTRINE. .............................. 39

VIII.  CONCLUSION ......................................................................... 42

3

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ashcroft v. Iqbal*
　556 U.S. 662 (2009)........................................................................34

*Ashelman v. Pope*
　793 F.2d 1072 (9th Cir. 1986) ................................................35, 36

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*
　520 U.S. 397 (1997)........................................................................18

*Bradley v. Fisher*
　13 Wall. 335 (1872) ......................................................................36

*Brandon v. Holt*
　469 U.S. 464 (1985)........................................................................20

*Canatella v. California*
　304 F.3d 843 (9th Cir. 2002) ......................................................15

*In re Castillo*
　297 F.3d 940 (9th Cir. 2002) ......................................................35

*Cooper v. Ramos*
　704 F.3d 772 (9th Cir. 2012) ......................................................40

*Depot, Inc. v. Caring for Montanans, Inc.*
　915 F.3d 643 (9th Cir. 2019) ......................................................14

*Doe & Assoc. Law Offices v. Napolitano*
　252 F.3d 1026 (9th Cir. 2001) ....................................................42

*Duvall v. Cnty. of Kitsap*
　260 F.3d 1124 (9th Cir. 2001) ....................................................35

*Eason v. Clark Cnty. Sch. Dist.*
　303 F.3d 1137 (9th Cir. 2002) ....................................................15

*Ewing v. City of Stockton*
　588 F.3d 1218 (9th Cir.2009) ......................................................34

4

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Fontana Empire Ctr., LLC v. City of Fontana*
    307 F.3d 987 (9th Cir. 2002) ..............................................................40

*Franceschi v. Schwartz*
    57 F.3d 828 (9th Cir. 1995) .................................................................19

*Greater L.A. Council on Deafness, Inc. v. Zolin*
    812 F.2d 1103 (9th Cir. 1987) ............................................................19

*Hart v. Massanari*
    266 F.3d 1155 (9th Cir. 2001) ......................................................11, 21

*Hess v. Port Authority Trans-Hudson Corp.*
    513 U.S. 30 (1994)..........................................................21, 22, 23, 24

*Hooper v. Brnovich*
    56 F.4th 619 (9th Cir. 2022) ..................................................39, 40, 41

*Jones v. Williams*
    297 F.3d 930 (9th Cir. 2002) ..............................................................34

*Kohn v. State Bar of California*
    87 F.4th 1021 (9th Cir. 2023) ......................................................*passim*

*Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*
    616 F.3d 963 (9th Cir. 2010) .........................................10, 18, 19, 34

*Long v. Cnty. of L.A.*
    442 F.3d 1178 (9th Cir. 2006) ....................................................18, 34

*Lund v. Cowan*
    5 F.4th 964 (9th Cir. 2021) .................................................................35

*Mireles v. Waco*
    502 U.S. 9 (1991)........................................................................36, 37

*Monell v. Dept. of Social Servs.*
    436 U.S. 658 (1978).....................................................................*passim*

25508.00152\42550045.1

# TABLE OF AUTHORITIES
(continued)

**Page**

*Morrison v. Peterson*
   809 F.3d 1059 (9th Cir. 2015) ...........................................................39

*Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*
   828 F.2d 1385 (9th Cir. 1987) .....................................................15, 37

*Noel v. Hall*
   341 F.3d 1148 (9th Cir. 2003) ...........................................................40

*Northwest Env't Def. Ctr. v. Brown*
   640 F.3d 1063 (9th Cir. 2011) ...........................................................15

*O'Neil v. City of Lake Oswego*
   642 F.2d 367 (9th Cir. 1981) .............................................................37

*Parke v. Raley*
   506 U.S. 20 (1992).............................................................................14

*Payne v. Marsteiner*
   No. CV 20-10066-JWH (KK), 2021 WL 765713 (C.D. Cal. Feb. 23, 2021) ....37

*Pierson v. Ray*
   386 U.S. 547 (1967)...........................................................................36

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*
   506 U.S. 139 (1993)...........................................................................24

*Schmidt v. Contra Costa County*
   693 F.3d 1122 (9th Cir. 2012) ...........................................................27

*Seminole Tribe of Fla. v. Fla.*
   517 U.S. 44 (1996).............................................................................23

*Simmons v. Navajo Cnty., Ariz.*
   609 F.3d 1011 (9th Cir. 2010) ...........................................................34

*Skinner v. Switzer*
   562 U.S. 521 (2011)...........................................................................39

6

# TABLE OF AUTHORITIES
(continued)

**Page**

*Stivers v. Pierce*
    71 F.3d 732 (9th Cir. 1995) ............................................................20

*Stump v. Sparkman*
    435 U.S. 349 (1978)..........................................................35, 36, 37

*Tanaka v. Univ. of S. Cal.*
    252 F.3d 1059 (9th Cir. 2001) ........................................................15

*In re Thomas*
    508 F.3d 1225 (9th Cir. 2007) ........................................................36

*Thompson v. City of L.A.*
    885 F.2d 1439 (9th Cir. 1989) ........................................................18

*Trevino v. Gates*
    99 F.3d 911 (9th Cir. 1996) ............................................................18

*Weldon v. Kapetan*
    No. 1:17-CV-01536-LJO-SKO, 2018 WL 2127060 (E.D. Cal. May 9, 2018)..37

*Will v. Michigan Dept. of State Police*
    491 U.S. 58 (1989)..........................................................10, 17, 18, 33

*Wolfe v. Strankman*
    392 F.3d 358 (9th Cir. 2004) ...................................................*passim*

*Worldwide Church of God v. McNair*
    805 F.2d 888 (9th Cir. 1986) ..........................................................42

*Ex parte Young*
    209 U.S. 123 (1908).........................................................................19

**State Cases**

*Sara M. v. Superior Court*
    116 P.3d 550 (Cal. 2005)...........................................................20, 27

*Silverbrand v. Cnty. of L.A.*
    205 P.3d 1047 (Cal. 2009) ..............................................................26

25508.00152\42550045.1

# TABLE OF AUTHORITIES
### (continued)

**Page**

**Federal Statutes**

28 U.S.C. § 1291 ..................................................................................11

28 U.S.C. § 1331 ..................................................................................11

42 U.S.C. § 1983 ............................................................................*passim*

**State Statutes**

Cal. Gov. Code, § 810 ..........................................................................20

Cal. Gov. Code, § 811.9 ........................................................................32

Cal. Gov. Code, § 825 ..........................................................................32

Cal. Gov. Code, § 900.3 ........................................................................30

Cal. Gov. Code, § 965 ......................................................................30, 31

Cal. Gov. Code, § 995 ..........................................................................32

Cal. Gov. Code, § 68070 ......................................................................27

Cal. Gov. Code, § 68500 ..........................................................19, 22, 29

Cal. Gov. Code, § 68502.5 ....................................................................29

Cal. Gov. Code, § 68506 ......................................................................29

Cal. Gov. Code, § 70391 ......................................................................26

Cal. Gov. Code, § 77100 ......................................................................29

Cal. Gov. Code, § 77101 ......................................................................29

Cal. Gov. Code, § 77200 ......................................................................29

Cal. Gov. Code, § 77204 ......................................................................31

Cal. Gov. Code, § 77206 ......................................................................29

25508.00152\42550045.1

## TABLE OF AUTHORITIES
(continued)

**Page**

**Rules**

Cal. Rules of Ct., Rule 10.1 ........................................................19, 20, 27

Cal. Rules of Ct., Rule 10.2 ......................................................................28

Cal. Rules of Ct., Rule 10.3 ......................................................................28

Cal. Rules of Ct., Rule 10.101 ..................................................................29

Cal. Rules of Ct., Rule 10.202 ....................................................20, 32, 33

**Constitutional Provisions**

Eleventh Amendment............................................................................*passim*

Fourteenth Amendment ...........................................................................13

Cal. Const. Art. VI, § 6 ........................................................................*passim*

Cal. Const., Art. VI, § 8 ...........................................................................35

Cal. Const., Art. VI, § 11 .........................................................................35

Cal. Const., Art. VI, § 12 .........................................................................35

Cal. Const., Art. VI, § 18 .........................................................................35

## I.    **INTRODUCTION**

In the instant 42 U.S.C. Section 1983 action, Appellants Jason D'Souza, Kristina Eisenacher, Rob Emert, Jennifer Garnica, Kristen Joseph, Patricia Boone, Mark Fidelman, and David King (collectively, "Appellants") seek to hold the Honorable Patricia Guerrero, the Chief Justice of California and the Chair of the Judicial Council of California ("Judicial Council"), liable for state trial court judges' purportedly erroneous child custody orders on the tenuous theory that the Judicial Council has a policy of failing to properly train family court judges in California.[1] (2-ER-108 ¶ 53.)

Among other grounds, Chief Justice Guerrero moved to dismiss Appellants' operative pleading, the First Amended Complaint ("FAC"), on the basis that circuit precedent appropriately recognizes that the Judicial Council is "clearly a state agency[,]" *Wolfe*, 392 F.3d at 364, and that the Chief Justice, as a state official being sued in her official capacity, is thus (1) neither a "person" subject to suit under Section 1983, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), nor subject to Section 1983 liability under *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*,

---

[1]      As noted by this Court, "[t]he Judicial Council directs and administers the California courts." *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004), *overruled on other grounds by Munoz v. Superior Court of Los Angeles County*, 91 F.4th 977, 981 (9th Cir. 2024).

10

616 F.3d 963, 968 (9th Cir. 2010); and (2) immune from damages liability under the Eleventh Amendment, *Wolfe*, 392 F.3d at 364. (2-ER-87:2-7; 2-ER-88:20-91:25; 1-ER-11:19-22.) Applying *Wolfe*, the district court properly granted Chief Justice Guerrero's motion to dismiss the FAC. (*See* 1-ER-4.)

Remarkably, as they did in the district court in discussing Eleventh Amendment immunity, Appellants ask this Court to disregard circuit law and hold that the Judicial Council is not a state agency. (AOB at 12:17-18:9.) Notwithstanding the fact that *Wolfe* is binding on subsequent panels in this Circuit, *Hart v. Massanari*, 266 F.3d 1155, 1171-72 (9th Cir. 2001), Appellants also inexplicably ignore the controlling authority in this Circuit for determining whether an entity is a state agency cloaked with Eleventh Amendment immunity, which confirms the Judicial Council is indeed a state entity. *See Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc). For these reasons, and the other grounds on which Chief Justice Guerrero moved to dismiss the FAC, the Court should affirm the district court's dismissal.

## II.    STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331, and this Court has jurisdiction under 28 U.S.C. § 1291.

## III.    STATEMENT OF ISSUES

The issues presented in this appeal are as follows:

11

(1) Whether the district court properly dismissed Appellants' Section 1983 action where circuit precedent recognizes that the Judicial Council is a state agency, where the Chief Justice is the Chair of the Judicial Council and thus a state official being sued in her official capacity, and where Chief Justice Guerrero is therefore not a "person" subject to suit within the meaning of Section 1983, not subject to Section 1983 liability under *Monell*, and not subject to damages liability under the Eleventh Amendment;

(2) Notwithstanding binding circuit law, whether the Judicial Council is a state agency for purposes of the Eleventh Amendment where application of the three-factor test set forth in *Kohn* clearly dictates that the Judicial Council is a state entity, namely that the State intended the Judicial Council to be a state entity, that the State controls the Judicial Council, and that the State Treasury is responsible for funding the Judicial Council; and

(3) Whether other grounds support dismissal of the FAC, particularly (a) whether Section 1983 liability lies against Chief Justice Guerrero for purportedly erroneous child custody orders where the Chief Justice had no personal participation in such orders and has no responsibility for supervising judges in the performance of their judicial duties, including the issuance of court orders, (b) whether this action is precluded by judicial immunity given Appellants are attacking court orders concerning child custody, and (c) whether Appellants' challenge of such orders is

12

prohibited under the *Rooker-Feldman* doctrine.

## IV.  **STATEMENT OF THE CASE**

### A.   **APPELLANTS' ALLEGATIONS**

The FAC alleges that Appellants are "fit" parents who were awarded "no actual parenting time" in child custody proceedings throughout California. (2-ER-99 ¶¶ 4-8, 10-12.) According to the FAC, "judges statewide issue physical custody orders that grant no 'actual parenting time' to 'fit' parents …" in violation of parents' First and Fourteenth Amendment rights. (2-ER-103 ¶ 30; *see also* 2-ER-100-103 ¶¶ 18-30.) The FAC avers that the Judicial Council has a policy of failing to train judges "that parenting is a fundamental right," and "that courts may not issue physical custody orders that grant no 'actual parenting time[]' absent findings of 'unfitness.'" (2-ER-108 ¶ 56; *see also* 2-ER-100, 108-109 ¶¶ 15, 57-58.) The FAC asserts that "[the] inadequate judicial training policies are a proximate cause of the constitutional harms that [Appellants] suffer." (2-ER-109 ¶ 59.)

The FAC sets forth a single claim against Chief Justice Guerrero in her official capacity as the Chair of the Judicial Council under Section 1983 based on *Monell*. (2-ER-99, 108 ¶¶ 3, 53.) The FAC seeks monetary damages "for each day [Appellants] and their children were wrongfully dispossessed of their fundamental rights[,]" and an injunction compelling the Judicial Council to provide training to state court judges. (2-ER-100 ¶¶ 16-17; *see also* 2-ER-109, 110 ¶¶ 61-62, 65(d)-(e).)

13

## B.    THE DISTRICT COURT'S DISMISSAL OF THE FAC

As noted above, Chief Justice Guerrero principally moved to dismiss the FAC on the grounds that circuit precedent appropriately holds that the Judicial Council is "clearly a state agency[,]" *Wolfe*, 392 F.3d at 364, and that the Chief Justice, as a state official being sued in her official capacity, is therefore not a "person" subject to suit under Section 1983, not subject to *Monell* liability, and is immune from damages liability under the Eleventh Amendment. (2-ER-87:2-7; 2-ER-88:20-91:25; 1-ER-11:19-22.) Chief Justice Guerrero also moved to dismiss the FAC on the grounds that no Section 1983 liability lies against her for purportedly erroneous child custody orders, that the action is foreclosed by judicial immunity because Appellants are challenging court orders, and that Appellants' attack of such orders renders the action barred under the *Rooker-Feldman* doctrine. In light of circuit law recognizing that the Judicial Council is a state agency, and that its Chair, i.e., the Chief Justice, is thus a state official, the district court properly granted Chief Justice Guerrero's motion to dismiss the FAC. (*See* 1-ER-4.)

## V.    STANDARD OF REVIEW

The decision of a district court is generally presumed to be correct. *Parke v. Raley*, 506 U.S. 20, 29 (1992). An order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim is reviewed de novo. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652 (9th Cir. 2019). De novo review similarly applies to

14

dismissals based on judicial immunity, *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987), Eleventh Amendment immunity, *Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1140 (9th Cir. 2002), and the *Rooker-Feldman* doctrine. *Canatella v. California*, 304 F.3d 843, 849, 850 (9th Cir. 2002). In reviewing the district court's dismissal, the Court also may affirm on any ground supported by the record, regardless of whether the district court relied on the same grounds or reasoning. *Northwest Env't Def. Ctr. v. Brown*, 640 F.3d 1063, 1080 (9th Cir. 2011), *rev'd on other grounds* 568 U.S. 597 (2013); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001).

## VI.  SUMMARY OF ARGUMENT

The FAC asserts a single claim for violation of Appellants' civil rights under Section 1983 against Chief Justice Guerrero in her official capacity as the Chair of the Judicial Council based on its alleged policy of failing to properly train family court judges. Neither state agencies nor state officials acting in their official capacities, however, are "persons" who may be sued under Section 1983; only municipalities and other local government units are "persons" who may be sued under Section 1983 based on a policy or custom that was the moving force of the constitutional deprivation. Because the Court in *Wolfe* properly recognized that the Judicial Council is a state agency, and the Chief Justice is its Chair and thus a state official, no Section 1983 liability lies against the Chief Justice.

The Eleventh Amendment also forecloses damages liability against state entities and state officials who are sued in their official capacities. Given binding circuit law appropriately holds that that the Judicial Council is a state agency, and the Chief Justice is therefore a state official as its Chair, Appellants' damages claim is further barred by the Eleventh Amendment.

Appellants' central line of attack on the district court's dismissal is that the Judicial Council is not a state entity, and that its Chair, the Chief Justice, is thus not a state official. While Appellants acknowledge circuit precedent holding otherwise, they improperly ask this Court to find that *Wolfe* was wrongfully decided. Not only is the district court and this Court both bound by *Wolfe*, but the application of controlling circuit law regarding the Eleventh Amendment also confirms *Wolfe*'s holding that the Judicial Council is clearly a state agency. Indeed, applying the three-factor test set forth in *Kohn*, the State intended the Judicial Council to be a state entity, the State controls the Judicial Council, and the State Treasury is responsible for funding the Judicial Council.

The district court's dismissal is also supported by additional grounds. Namely, the FAC fails to state a claim upon which relief can be granted under Section 1983 because Chief Justice Guerrero had no personal participation in the allegedly erroneous child custody orders entered against Appellants, and she has no responsibility for supervising judges in the performance of their judicial duties,

16

including family court judges' issuance of such orders. While Chief Justice Guerrero did not issue the child custody orders at issue, Appellants' attack thereon is also barred by the doctrine of judicial immunity, which precludes liability for judges' judicial acts performed within their subject matter jurisdiction. Finally, Appellants' action is prohibited under the *Rooker-Feldman* doctrine, which prevents federal courts from hearing *de facto* appeals of state court decisions.

## VII.  <u>ARGUMENT</u>

### A.  **NO SECTION 1983 LIABILITY LIES AGAINST THE CHIEF JUSTICE BECAUSE SHE IS A STATE OFFICIAL**

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

It is well-settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. Our Supreme Court has explained that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[,]" and thus "it is no different from a suit against the State itself." *Id.* (citations omitted).

In contrast to state agencies and officials, municipalities and other local government units are considered "persons" under Section 1983 and therefore may

17

be sued for causing a constitutional deprivation. *Monell*, 436 U.S. at 690; *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). To state a cognizable claim against a municipality or other local government agency, the plaintiff must show that the entity's policy or custom was the moving force of the violation of constitutional rights.[2] *Monell*, 436 U.S. at 694.

"However, the Supreme Court has expressly declined to extend *Monell*'s theory of municipal liability under § 1983 to state entities." *Krainski*, 616 F.3d at 968 (citing *Will*, 491 U.S. at 71) (affirming dismissal of Section 1983 claims against state university and university employees).

In the instant action, the FAC purports to assert a Section 1983 claim against Chief Justice Guerrero under *Monell* based on the Judicial Council's alleged policy of failing to properly train family court judges. (2-ER-108 ¶ 53.) This Court, however, has expressly held that the Judicial Council is "clearly a state agency[,]" reasoning that "[t]he Judicial Council directs and administers the California courts." *Wolfe*, 392 F.3d at 364 (citing Cal. Const. art. VI, § 6 (defining the role of the Judicial

---

[2]    A plaintiff must show that the policy or custom was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "[P]roof of random acts or isolated events is insufficient to establish a custom or practice." *Thompson v. City of L.A.*, 885 F.2d 1439, 1444 (9th Cir. 1989), *overruled on other grounds by Bull v. City and Cnty. of S.F.*, 595 F.3d 964 (9th Cir. 2010). Rather, a plaintiff must prove "that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Council); Cal. Gov. Code §§ 68500 *et seq.* (describing funding and management process for Judicial Council)); *see also* Cal. Rules of Ct., rule 10.1(a)(1) (providing "[t]he Judicial Council … is a state entity established by the California Constitution and chaired by the Chief Justice of California"). Because the Judicial Council is a state entity, and Chief Justice Guerrero is the Chair of the Judicial Council and thus a state official, no *Monell* liability lies against the Chief Justice.

### B. APPELLANTS' SECTION 1983 CLAIM FOR DAMAGES IS ALSO FORECLOSED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment bars suits for damages, injunctive relief, and declaratory relief against "a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995); *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987), *superseded by statute on other grounds*. "A narrow exception exists 'where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights.'" *Krainski*, 616 F.3d at 967-68 (internal citations and emphasis omitted); *see Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding the Eleventh Amendment does not prohibit suits against state officers sued in their official capacity "for prospective relief from an ongoing violation of federal law"); *Wolfe*, 392 F.3d at 365; *but see Munoz*, 91 F.4th at 981 (overruling *Wolfe* "[t]o the extent [it] can be read to hold that the *Ex parte Young* exception allows injunctions against judges acting in their judicial capacity[]").

19

The Eleventh Amendment's prohibition of actions against state entities also applies to state officials when they are sued in their official capacities. *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995). The Eleventh Amendment's bar remains in effect for state officials because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *see also* Cal. Rules of Ct., rule 10.202(b) (establishing Judicial Council's duty to indemnify justices of the Supreme Court under California's Government Claims Act, Cal. Gov. Code §§ 810 *et seq*.).

Here, Appellants have sued Chief Justice Guerrero in her official capacity as the Chair of the Judicial Council for damages for purported violations of their civil rights under Section 1983. (2-ER-99, 100, 109, 110 ¶¶ 3, 17, 62, 65(d).) Given the Judicial Council is a state agency, *Wolfe*, 392 F.3d at 364; *see also Sara M. v. Superior Court*, 116 P.3d 550, 558 (Cal. 2005) (noting the Judicial Council is "an agency in the judicial branch of state government"), and the Chief Justice is therefore a state official as its Chair, Cal. Rules of Ct., rule 10.1(a)(1), Appellants' damages claim is barred by the Eleventh Amendment.

### C. APPELLANTS' ATTACK ON CIRCUIT PRECEDENT RECOGNIZING THE JUDICIAL COUNCIL IS A STATE AGENCY IS UNAVAILING

The central premise of Appellants' attack on the district court's dismissal of their action is that the Judicial Council is not a state entity, and that its Chair, the Chief Justice, is thus not a state official. (AOB at 12:17-18:9.) Incredibly, Appellants

20

concede that *Wolfe* "concludes that [the Judicial Council] is an immune state agency[,]" but contend that *Wolfe* was wrongfully decided because the Court did not consider *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994). (*Id.* at 16:14-21.)

Appellants' attack on *Wolfe* is meritless. As detailed below, *Wolfe* is binding circuit law, *Hart*, 266 F.3d at 1171, *Hess* has no application in this case, and notwithstanding circuit precedent, the Judicial Council is unequivocally a state entity under controlling circuit law regarding the Eleventh Amendment, which Appellants inexplicably ignore. *See Kohn*, 87 F.4th at 1030.

      1.    <u>Circuit Precedent Holds That The Judicial Council Is A State Agency</u>.

"Circuit law … binds all courts within a particular circuit, including the court of appeals itself. Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals." *Hart*, 266 F.3d at 1171. Indeed, this Court has explained in pertinent part:

> Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court. … [A] later three-judge panel considering a case that is controlled by the rule announced in an earlier panel's opinion has no choice but to apply the earlier-adopted rule; it may not any more disregard the earlier panel's opinion than it may disregard a ruling of the Supreme Court. *Id.* (footnote and citations omitted).

21

The issue of whether the Judicial Council is a state entity was expressly considered and decided by the Court in *Wolfe*. 392 F.3d at 364 (noting "[w]hether the Judicial Council is a proper party to a suit brought under § 1983 therefore depends on whether it is a state agency[]"). Because "[t]he Judicial Council directs and administers the California courts[]" under the mandate of the California Constitution, this Court appropriately concluded "it is clearly a state agency." *Id.* (citing Cal. Const. art. VI, § 6(d); Cal. Gov. Code §§ 68500, *et seq*.).

Despite Appellants' criticism, the Court is bound by *Wolfe* and its holding that the Judicial Council is a state entity. Accordingly, as the Chair of the Judicial Council and thus a state official, Chief Justice Guerrero is not a "person" amenable to suit under Section 1983, not subject to *Monell* liability, and is immune from damages liability under the Eleventh Amendment.

## 2.    *Hess* Has No Application In This Case.

While *Wolfe* is binding circuit law, Appellants' principal criticism of *Wolfe* is that the Court did not mention *Hess* or the "state treasury criterion"/"financial independence" test discussed therein, which asks whether "the agency generate[s] its own revenue" and "pay[s] its own debts." (AOB at 16:14-21.)

In *Hess*, the Supreme Court held that the Port Authority Trans-Hudson Corporation (PATH) – a bistate entity created under the Constitution's Interstate Compact Clause – is not cloaked with Eleventh Amendment immunity. 513 U.S. at

22

32-33, 35. The Supreme Court reasoned that PATH is "[a] discrete entity created by constitutional compact among three sovereigns, … is financially self-sufficient[,] [] generates its own revenues, and [] pays its own debts[,]" and that "[r]equiring [it] to answer in federal court … does not touch the concerns – the States' solvency and dignity – that underpin the Eleventh Amendment." *Id.* at 52. Appellants' reliance on *Hess* is misplaced for multiple reasons.

First, *Hess* is inapposite given the nature and attributes of the entity at issue therein. PATH is a discrete, bistate entity established under the Constitution's Interstate Compact Clause, which entities the Supreme Court recognized "occupy a significantly different position in our federal system than do the States themselves." *Id.* at 35, 40. Moreover, "[PATH] was conceived as a financially independent entity, with funds primarily derived from private investors[,]" where "[t]olls, fees, and investment income account for [PATH]'s secure financial position." *Id.* (internal quotation marks and citations omitted). In stark contrast, and as is further detailed herein, the Judicial Council was created by the California Constitution to direct and administer California's courts, and it shares none of PATH's financial self-sufficiency features. Cal. Const. art. VI, § 6(d); *Wolfe*, 392 F.3d at 364.

The Supreme Court has also since clarified that "[t]he Eleventh Amendment does not exist solely in order to 'preven[t] federal-court judgments that must be paid out of a State's treasury[.]'" *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996)

23

(quoting *Hess*, 513 U.S. at 48). Rather, "[the Eleventh Amendment] also serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties[.]'" *Id.* (quoting *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)); *see also Kohn*, 87 F.4th at 1030 (noting "the Eleventh Amendment 'does not require a focus solely on the financial impact of the entity on the [s]tate' because the Eleventh Amendment is equally concerned with 'the dignity interests of the state[]' [Citation]"). Thus, contrary to Appellants' assertion, Eleventh Amendment immunity is not solely dependent on the state treasury criterion.

### 3.    <u>*Kohn* Confirms That The Judicial Council Is A State Entity</u>.

Notwithstanding this Court's holding in *Wolfe* that the Judicial Council is a state agency, the Judicial Council is clearly a state entity cloaked with Eleventh Amendment immunity under the three-factor test announced by the en banc panel in *Kohn*, a case that Appellants inexplicably ignore.

In *Kohn*, this Court rejected the notion that courts "should continue to prioritize the treasury factor." 87 F.4th at 1028. The Court instead adopted a three-factor test for determining whether an entity is an arm of the State. *Id.* at 1031. Under this test, courts must consider the following factors: "(1) the [s]tate's intent as to the status of the entity, including the functions performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury." *Id.*

24

at 1030 (internal quotation marks and citations omitted).

Applying these factors, this Court held in *Kohn* that the State Bar of California ("State Bar") is "an arm of the state and entitled to sovereign immunity." *Id.* at 1032. The Court reached this conclusion despite there being "no dispute that California law makes the State Bar responsible for its own debts and liabilities," and that "California would not be liable for a judgment against the State Bar." *Id.* at 1036. The Court reasoned that "th[e] third factor is not dispositive[;]" that "[g]iven that the intent and control factors strongly favor the conclusion that California 'structured' the State Bar to 'enjoy the special constitutional protection of the [s]tate[ ] [itself],'" the third factor, placed in its proper context, cannot overcome the first two[;]" and that the Court "[saw] no reason to disturb [its] nearly forty-year-old determination that the California State Bar is an arm of the state and entitled to immunity in federal court." *Id.* at 1037.

The Eleventh Amendment's application to the Judicial Council is even more compelling than the State Bar, as the intent, control, and treasury factors all strongly support the Judicial Council's immunity. Each of these factors is addressed in turn.

a.    The State Intended The Judicial Council To Be A State Entity.

"The first factor of intent turns on whether state law expressly characterizes the entity as a governmental instrumentality rather than as a local governmental or non-governmental entity; whether the entity performs state governmental functions;

whether the entity is treated as a governmental instrumentality for purposes of other state law; and state representations about the entity's status. [Citation.]" *Kohn*, 87 F.4th at 1030. The intent factor clearly supports the determination that the Judicial Council is an arm of the State.

The Judicial Council was created by the California Constitution, and its constitutionally prescribed role is defined as follows:

> To improve the administration of justice the council shall survey judicial business and make recommendations to the courts, make recommendations annually to the Governor and Legislature, adopt rules for court administration, practice and procedure, and perform other functions prescribed by statute. The rules adopted shall not be inconsistent with statute. Cal. Const. art. VI, § 6(d).

Based on the foregoing, this Court appropriately recognized that "[t]he Judicial Council directs and administers the California courts." *Wolfe*, 392 F.3d at 364. Indeed, the Judicial Council is "the entity charged by the California Constitution with adopting statewide rules for court administration, practice, and procedure." *Silverbrand v. Cnty. of L.A.*, 205 P.3d 1047, 1058-59 (Cal. 2009); *see also* Cal. Gov. Code, § 70391 (noting the Judicial Council is "the policymaking body for the judicial branch").

Consistent with its constitutional role, the California Legislature has further provided that "[t]he Judicial Council is encouraged to adopt rules to provide for uniformity in rules and procedures throughout all courts in a county and statewide."

26

Cal. Gov. Code, § 68070(b). Such rules are "adopted [in] the California Rules of Court, which have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions." *Schmidt v. Contra Costa County*, 693 F.3d 1122, 1133 (9th Cir. 2012) (internal quotation marks and citations omitted).

The California Rules of Court themselves also underscore the fact that the Judicial Council is a state entity and performs government functions typically performed by state governments. The Rules of Court expressly state that "[t]he Judicial Council … is a state entity established by the California Constitution and chaired by the Chief Justice of California." Cal. Rules of Ct., rule 10.1(a)(1). The Rules of Court also identify the Judicial Council's purpose, which is to "set[] the direction for improving the quality of justice and advancing the consistent, independent, impartial, and accessible administration of justice by the judicial branch for the benefit of the public." *Id.* It is the Judicial Council who "establishes policies and sets priorities for the judicial branch of government." *Id*., rule 10.1(a)(2); *see also id*. rule 10.1(a)(3), Appendix D (setting forth Judicial Council Governance Policies).

California courts have also appropriately recognized that the Judicial Council is a state entity. The California Supreme Court has specifically described the Judicial Council as "an agency in the judicial branch of state government." *Sara M.*, 116 P.3d

27

at 558. The intent factor therefore strongly favors the conclusion that the Judicial Council is a state entity.

b.    The Judicial Council Is Controlled By The State.

"The second factor depends on how members of the governing body of the entity are appointed and removed, as well as whether the state can 'directly supervise and control [the entity's] ongoing operations.' [Citation.]" *Kohn*, 87 F.4th at 1030. This factor also clearly supports recognizing that the Judicial Council is a state entity.

The composition of the Judicial Council is prescribed by the California Constitution. Cal. Const. art. VI, § 6(d). The Judicial Council consists of the Chief Justice; another justice of the California Supreme Court, three justices of the California Courts of Appeal, ten judges of the California superior court, two nonvoting court administrators, and other nonvoting members, each of which is appointed by the Chief Justice; four members of the State Bar appointed by its Board of Trustees; and one member from each house of the Legislature appointed by that house. *Id.*; Cal. Rules of Ct., rules 10.2(a)(1), 10.3. The California Constitution also authorizes the Judicial Council to appoint an Administrative Director, who serves as the secretary of the Judicial Council and is a nonvoting member of the Council. Cal. Const. art. VI, § 6(c); Cal. Rules of Ct., rule 10.2(b)(4).

28

The authority to appoint officers, assistants, and other employees at the Judicial Council is also dictated by the State. Namely, the California Legislature elected to grant such authority to the Judicial Council itself. Cal. Gov. Code § 68500. The appointment and composition of the members of the Judicial Council, along with its staff, therefore takes place entirely under the control of the State.

The State's control over the Judicial Council, and the entire judicial branch, also extends far beyond its composition. One notable example is the budget process.

The Legislature has tasked the Judicial Council with budget and fiscal management of California's courts. Cal. Gov. Code §§ 68502.5, 77206. Following a lengthy, internal review and approval process each year, the Judicial Council forwards a proposed budget for California's entire judicial branch to the Governor for inclusion in the Governor's proposed State Budget. *Id.* § 68502.5; Cal. Rules of Ct., rule 10.101. Thus, while the Judicial Council participates in preparing the State's judicial branch's budget, which includes the Council's own funding, the Governor and Legislature are ultimately responsible for approval of the budget and funding the judicial branch. *See* Cal. Gov. Code § 68506 (requiring salaries and expenses incurred by the Judicial Council to be audited by the State Controller); *see also id.* §§ 77100, 77101 (recognition by Legislature that the expenditure of state funds for California's trial courts is "in the public interest and necessary …"); *id.* § 77200 (placing "sole responsibility for the funding of court operations" on the State). The

29

control factor therefore also unequivocally militates in favor of treating the Judicial Council as a state entity.

        c.     <u>The State Treasury Is Responsible For Funding The Judicial Council</u>.

The final factor is the Judicial Council's "financial relationship to California and its overall effects on California's treasury." *Kohn*, 87 F.4th at 1035 (citations omitted). "In analyzing this third factor ... the relevant issue is a [s]tate's overall responsibility for funding the entity or paying the entity's debts or judgments, not whether the [s]tate would be responsible to pay a judgment in the particular case at issue." *Id.* (internal quotation marks, citations, and emphasis omitted). Although "this third factor is not dispositive[,]" and when "placed in its proper context, cannot overcome the first two[,]" *Id.* at 1037, the treasury factor also supports the Judicial Council's immunity.

California Government Code section 965 governs the payment of judgments entered against a "judicial branch entity" or judge. *See* Cal. Gov. Code § 900.3 (defining "judicial branch entity" as "a public entity and [] any superior court, court of appeals, the Supreme Court, [or] the Judicial Council[] …"; *id.* § 940.3 (same). Section 965 provides in relevant part:

> [C]laims, settlements, or judgments arising out of the activities of a judicial branch entity … or a judge thereof may be paid if the Judicial Council authorizes payment and the Administrative Director of the Courts certifies that sufficient funds for that payment exist from funds allocated to settlement, adjustment, and compromise of

30

actions and claims. If sufficient funds for payment of settlements or judgments do not exist, the Administrative Director of the Courts shall report the settlements and judgments to the chairperson of either the Senate Committee on Appropriations or the Assembly Committee on Appropriations, who shall cause to be introduced legislation appropriating funds for the payment of the settlements or judgments. … *Id.* § 965.

California Government Code section 77204(a) further grants the Judicial Council with the following authority:

The Judicial Council shall have the authority to allocate funds appropriated annually to the State Trial Court Improvement and Modernization Fund for the purpose of paying legal costs resulting from lawsuits or claims involving … the Judicial Council, or a member or employee of the Judicial Council … and arising out of (1) the actions or conduct of a trial court, trial court bench officer, or trial court employee, (2) a challenge to a California rule of court, form, local trial court rule, or policy, or (3) the actions or conduct of the Judicial Council or the Administrative Office of the Court affecting one or more trial courts and for which the state is named as a defendant or alleged to be the responsible party. *See also* Cal. Gov. Code §§ 77204(b) (defining "legal costs"), 77209 (establishing the State Trial Court Improvement and Modernization Fund maintained by the State Treasury).

Based on the foregoing, the State is responsible for funding judgments entered against the Judicial Council or the Chief Justice. Appellants' assertions that the Judicial Council is "financially self-sufficient," "generates its own revenues," and "pays its own debts" are therefore simply erroneous. (*See* AOB at 14:1-11; *see also* 2-ER-109 ¶ 60.)

31

4.    <u>The Judicial Council's Hiring Of A Private Law Firm And The Ability To Incur Debt Are Immaterial To Eleventh Amendment Immunity</u>.

Appellants' remaining attacks on the Judicial Council being a state entity are also unavailing. As they did in the district court, Appellants contend that the Judicial Council is a private entity because Chief Justice Guerrero is being represented by an outside law firm, as opposed to the State Attorney General, and the Judicial Council has a Dun & Bradstreet number and can therefore obtain loans. (AOB at 14:12-14, 14:25-15:24.)

Regarding the former, California's Government Claims Act mandates that the Judicial Council "provide for representation, defense, and indemnification" for judges and justices of the California Courts of Appeal and California Supreme Court. Cal. Gov. Code § 811.9(a); Cal. Rules of Ct., rule 10.202(b); *see also* Cal. Gov. Code §§ 825(a), 995 (governing public entities' defense of their employees). In doing so, "[t]he Judicial Council shall provide for that representation or defense through the county counsel, the Attorney General, *or other counsel*. Cal. Gov. Code § 811.9(a) (emphasis added); *see also id.* § 11045(e) (excluding the courts and any agency in the judicial branch of government from those state agencies who must obtain the Attorney General's consent to obtain outside counsel); *id.* § 996 (permitting public entities to provide defense of their employees by their own counsel or employing other counsel). Even where county counsel or the Attorney General are requested to provide representation or defense for a judge, they are not required to do so. Cal.

32

Gov. Code § 811.9(a).

The California Rules of Court similarly allow the Judicial Council's Legal Services office to select any counsel to represent any judge or justice named as a defendant in a lawsuit. Cal. Rules of Ct., rule 10.202(b)(3). Not only is a private law firm's representation of Chief Justice Guerrero in this matter therefore inconsequential, but the Judicial Council's duty to provide for the representation, defense, and indemnification of the Chief Justice further supports the State's control over the Judicial Council and Chief Justice.

As to Appellants' latter contention, they claim the Judicial Council's ability to obtain loans means it is a private entity. Appellants, however, do not and cannot explain how the ability to incur debt equates to being a private entity, let alone how it impacts consideration of the intent, control, and treasury factors. Indeed, the State of California itself appears on the last page of Appellants' Dun & Bradstreet report. (2-ER-82.) That the Judicial Council is listed by Dun & Bradstreet, along with the State, has no bearing on whether it is a state entity.

As detailed above, all three factors outlined in *Kohn* confirm this Court's holding 20 years ago in *Wolfe* that the Judicial Council is a state entity, and hence Chief Justice Guerrero is a state official. The district court therefore properly dismissed the FAC on the grounds that the Chief Justice is not a "person" within the meaning of Section 1983, *Will*, 491 U.S. at 71, that no liability lies against the Chief

33

Justice under *Monell*, *Krainski*, 616 F.3d at 968, and that the Chief Justice is entitled to Eleventh Amendment immunity. *Wolfe*, 392 F.3d at 364.

### D. ADDITIONAL GROUNDS SUPPORT DISMISSAL OF THE ACTION

#### 1. The FAC Fails To State A Claim Upon Which Relief Can Be Granted Against Chief Justice Guerrero.

To state a claim under Section 1983, a plaintiff is required to show that the defendant (1) acted under color of state law, and (2) deprived the plaintiff of rights secured by the Constitution or federal law. *Long*, 442 F.3d at 1185. There is no *respondeat superior* liability under Section 1983; a plaintiff must demonstrate that each defendant personally participated in the deprivation of his or her rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir.2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Here, the FAC does not and cannot allege that Chief Justice Guerrero had any personal involvement in the purportedly erroneous child custody orders entered against Appellants. In an apparent end run around directly challenging these rulings, the FAC instead attempts to hold the Chief Justice liable for such orders by alleging, albeit in a purely conclusory manner, that the Judicial Council failed to properly train judges regarding constitutional parental rights. (2-ER-100, 108-109 ¶¶ 15, 56-58.)

Appellants' efforts to hold the Chief Justice liable on a failure-to-train theory fail because the Judicial Council is not responsible for supervising judges in the

34

performance of their judicial duties, including the issuance of court orders. Rather, the power to review judicial decisions is reserved for California's appellate courts. *See* Cal. Const., art. VI, §§ 11(a), 12(b). Moreover, only the Commission on Judicial Performance is responsible for investigating complaints of judicial misconduct and judicial incapacity and disciplining judges. *See* Cal. Const., art. VI, §§ 8, 18. It is also the responsibility of trial court judges themselves – not the Judicial Council or the Chief Justice – to be "faithful to the law" and "maintain professional competence in the law." Cal. Code Jud. Ethics, canon 3B(2). Accordingly, no Section 1983 liability lies against Chief Justice Guerrero based on allegedly erroneous child custody orders rendered against Appellants.

2.    <u>Judicial Immunity Bars Appellants' Challenge Of Child Custody Orders</u>.

"'It is well settled that judges are generally immune from suit for money damages.'" *Lund v. Cowan*, 5 F.4th 964, 970 (9th Cir. 2021) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001)); *see also Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc). "This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives, [citation], or when the exercise of judicial authority is 'flawed by the commission of grave procedural errors.'" *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)). "Judicial immunity applies however erroneous the act may have

been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman*, 793 F.2d at 1075 (internal quotation marks omitted). "Disagreement with the action taken by [a] judge," even one resulting in "tragic consequences," "does not justify depriving that judge of his immunity." *Stump*, 435 U.S. at 363 (applying judicial immunity to judge who approved petition for sterilization even if approval was in error).

"Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (superseded by statute on other grounds) (quoting *Bradley v. Fisher*, 13 Wall. 335, 347 (1872)). Moreover, a judge's errors should be corrected on appeal, not by subsequent civil litigation because civil liability "would contribute not to principled and fearless decisionmaking but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *In re Thomas*, 508 F.3d 1225, 1227 (9th Cir. 2007) (per curiam).

It is well-established that judicial immunity applies to civil rights actions brought under Section 1983, *Pierson*, 386 U.S. at 554-55; *see also Stump*, 435 U.S. at 355-56; *Ashelman*, 793 F.2d at 1075. Moreover, where injunctive relief is sought, Section 1983 expressly provides that "in any action brought against a judicial officer

36

for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The phrase "declaratory relief" refers to the ability of a litigant to "appeal[ ] the judge's order." *Payne v. Marsteiner*, No. CV 20-10066-JWH (KK), 2021 WL 765713, at *3 (C.D. Cal. Feb. 23, 2021) (quoting *Weldon v. Kapetan*, No. 1:17-CV-01536-LJO-SKO, 2018 WL 2127060, at *4 (E.D. Cal. May 9, 2018)), *findings and recommendation accepted*, 2021 WL 765714 (C.D. Cal. Feb. 25, 2021), *aff'd*, 2022 WL 256357 (9th Cir. 2022)).

The only two instances in which judicial immunity can be overcome are where the actions were "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" or were "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. Regarding the former, an act is considered "judicial" when "it is a function normally performed by a judge" and "[the parties] dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. As to the latter, "[a] clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." *Mullis*, 828 F.2d at 1389 (holding bankruptcy judge's allegedly improper retention of jurisdiction after filing of appeal "[was], at most, [an] error[] or act[] in excess of jurisdiction, not [an] act[] in the clear absence of all jurisdiction"); *see also O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (distinguishing judges "act[ing] in clear absence of all jurisdiction" from

37

"act[ing] merely in excess of jurisdiction").

Here, among other grounds, Chief Justice Guerrero moved to dismiss the FAC based on judicial immunity because Appellants' action amounts to a *de facto* attack on adverse court orders regarding child custody. (2-ER-92:26-93:28; *see also* 2-ER-103 ¶ 30.) Appellants nevertheless contend that judicial immunity does not apply because they are not challenging any "judicial acts" and are instead "challeng[ing] statewide child-custody 'policies' set by [the Judicial Council]." (AOB at 11:4-6.)

The fundamental defect in Appellants' argument is that the theory of their case would gut the doctrine of judicial immunity. Appellants do not dispute that judges are absolutely immune from suit for their "judicial acts." Under Appellants' theory, however, rather than directly suing a judge in response to an adverse ruling, a disgruntled state court litigant can bypass judicial immunity by suing the Chief Justice and alleging that the purportedly erroneous ruling was the result of the Judicial Council's failure to properly train judges in the particular area of law at issue. The FAC also suggests that Appellants believe that their theory of liability entitles them to damages arising from a judge's allegedly erroneous order. (2-ER-100 ¶ 17 (praying for monetary damages "for each day [Plaintiffs] and their children were wrongfully dispossessed of their fundamental rights")). Allowing dissatisfied litigants to sue the Chief Justice under Appellants' theory of liability should not be tolerated because it would undermine the doctrine of judicial immunity.

3.    Appellants' Action Is Also Prohibited By The *Rooker-Feldman* Doctrine.

Chief Justice Guerrero also moved to dismiss the FAC under the *Rooker-Feldman* doctrine. (2-ER-94:1-95:17.) "Under the *Rooker-Feldman* doctrine, 'a state-court decision is not reviewable by lower federal courts.'" *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022) (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)).

In *Hooper*, the plaintiff had unsuccessfully moved in state court for an order permitting him to conduct DNA and fingerprint analysis on a crime scene. 56 F.4th at 621. The plaintiff thereafter filed a lawsuit under Section 1983 in federal court seeking a "declaratory judgment that the [state] statutes providing for forensic testing of DNA and other evidence are unconstitutional as applied to him as well as an injunction ordering defendants to permit him to conduct the forensic testing." *Id.* at 621-22. The Court held that the federal district court "lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine because th[e] action amounted to an improper appeal of the state courts' judgment." *Id.*

The Court observed that *Rooker-Feldman* bars lower federal courts from exercising subject matter jurisdiction over an action brought as a direct appeal as well as a "'de facto equivalent' of such an appeal." *Id.* at 624 (quoting *Morrison v. Peterson*, 809 F.3d 1059, 1069-70 (9th Cir. 2015)). "To determine whether an action functions as a de facto appeal, [a court should] 'pay close attention to the *relief*

39

sought by the federal-court plaintiff.'" *Id.* (quoting *Cooper v. Ramos*, 704 F.3d 772, 777-78 (9th Cir. 2012)) (emphasis in original). A court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine when the federal court plaintiff "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003).

Where a plaintiff files a claim in federal court alleging an erroneous ruling by a state court, "the jurisdictional inquiry hinges on whether the constitutional claims presented to the district court 'are *inextricably intertwined* with the state court's [ruling].'" *Hooper*, 56 F.4th at 624 (quoting *Cooper*, 704 F.3d at 778)) (emphasis in original). "Claims are inextricably intertwined if 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Id.* at 624-25 (quoting *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002)).

Because the plaintiff in *Hooper* sought an order from the district court stating that he was entitled to the DNA testing, this Court found that his requested relief "would effectively reverse the state courts' decision that he is not entitled to this testing." *Hooper*, 56 F.4th at 625. It was a "pure horizontal appeal of the state court's decision," and essentially amounted to an argument that "the state courts decided his case incorrectly." *Id.*

40

Similar to *Hooper*, and while Chief Justice Guerrero did not issue such orders, the underlying theory of Appellants' case is that the trial court judges' underlying custody orders entered against them violate their constitutional rights. The FAC also seeks relief from these alleged legal wrongs in the form of monetary damages. (2-ER-100, 109, 110 ¶¶ 17, 62, 65(d).)

Similar to their argument regarding judicial immunity, Appellants contend they are "challenging statewide judicial 'policy' which led to unconstitutional judicial kidnappings." (AOB at 19:7-8.) Appellants also suggest that *Rooker-Feldman* only applies to "final state-court judgments," and that custody orders are not final judgments. (*Id.* at 20:20-22.) Appellants' assertions are unavailing.

Just as Appellants' theory of liability would enable them to circumvent judicial immunity, so too does their theory with regard to the *Rooker-Feldman* doctrine. While Appellants purport to only attack a Judicial Council policy, the FAC specifically seeks monetary damages "for each day [Plaintiffs] and their children were wrongfully dispossessed of their fundamental rights." (2-ER-100 ¶ 17; *see also* 2-ER-109, 110 ¶¶ 62, 65(d).) Appellants' statement that they are merely attacking a Judicial Council policy, and not the underlying child custody orders, is therefore dubious.

Finally, as to Appellants' suggestion that *Rooker-Feldman* is limited to final judgments, this Court has held otherwise. *Rooker-Feldman* applies to state court

41

interlocutory orders and non-final judgments. *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001); *see also Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986) (recognizing *Rooker-Feldman* "should apply to state judgments even though state court appeals are not final"). Because Appellants complain of alleged legal wrongs committed in state court, and they seek relief from the underlying orders in the form of monetary damages, Appellants' action is barred by the *Rooker-Feldman* doctrine.

## VIII.  CONCLUSION

For the reasons set forth herein, the Court should affirm the district court's dismissal of the action with prejudice.

Dated:  September 3, 2024                    BEST BEST & KRIEGER LLP


                                             By: /s/  Matthew L. Green
                                                 MATTHEW L. GREEN
                                                 Attorneys for Defendant-Appellee
                                                 HON. PATRICIA GUERRERO,
                                                 Chief Justice of California and Chair
                                                 of the Judicial Council of California

25508.00152\42550045.1

## STATEMENT OF RELATED CASES

## PURSUANT TO CIRCUIT RULE 28-2.6

The Defendant-Appellee is not aware of any related cases.

Dated:  September 3, 2024          BEST BEST & KRIEGER LLP

By: /s/ Matthew L. Green
      MATTHEW L. GREEN
      Attorneys for Defendant-Appellee
      HON. PATRICIA GUERRERO,
      Chief Justice of California and Chair
      of the Judicial Council of California

43

D'Souza, et al. v. Guerrero
United States Court of Appeals for the Ninth Circuit
Case No. 24-2537

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the
Court for the United States Court of Appeals for the Ninth Circuit by using the
appellate CM/ECF system on September 3, 2024:

**ANSWERING BRIEF OF HON. PATRICIA GUERRERO**

On the date stated below. I served the documents via CM/ECF described
above on the designated recipients through electronic transmission of said
documents; a certified receipt is issued to filing party acknowledging receipt by
CM/ECF's system. Once CM/ECF has served all designated recipients, proof of
electronic service is returned to the filing party.

Dated:  September 3, 2024              _____/s/ Lisa Atwood_____
                                          Lisa Atwood

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-2537

I am the attorney or self-represented party.

**This brief contains** | 7,956 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The briefs type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one):*

☒ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated | | .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Matthew L. Green | **Date** | September 3, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/22*